OPINIONS OF THE SUPREME COURT OF OHIO
**** SUBJECT TO FURTHER EDITING ****

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

Galayda, Appellee, v. Lake Hospital Systems, Inc., f.k.a. Lake County Memorial Hospitals, Inc.; Damian et al., Appellants.
[Cite as Galayda v. Lake Hosp. Sys., Inc. (1994),     Ohio St.3d    .]
Medical malpractice -- Judgment -- Payment of future damages -- R.C. 2323.57 unconstitutional -- R.C. 1343.03(C) does not violate Due Process Clause or Right to Jury Trial Clause of Ohio Constitution.

1. R.C. 2323.57, which requires a trial court upon motion of a party to order that any future damages award in excess of $200,000 be paid in a series of periodic payments, is unconstitutional in that it violates the Right to Jury Trial Clause (Section 5, Article I) and the Due Process Clause (Section 16, Article I) of the Ohio Constitution.

2. R.C. 1343.03(C), which authorizes an award of prejudgment interest in a tort action against a defendant who failed to act in good faith to settle, does not violate either the Due Process Clause (Section 16, Article I) or the Right to Jury Trial Clause (Section 5, Article I) of the Ohio Constitution by imposing a penalty for exercise of that right.

(No. 93-2276 -- Submitted September 21, 1994 -- Decided December 30, 1994.

Appeal from the Court of Appeals for Cuyahoga County, No. 63151.

On the morning of June 18, 1988, plaintiff-appellee Charles Galayda ("plaintiff") lost control of his minivan and hit a tree. He was transported to Lake County Hospital East by ambulance at 3:30 a.m.

While at Lake County Hospital, plaintiff underwent three operations which were performed by appellant, Dr. Armando B.

Damian.  During each of these procedures Dr. Damian observed bile staining within the abdominal cavity.  On each of these occasions, Dr. Damian visually examined the common bile duct by performing a Kocher maneuver.  However, at no time did Dr. Damian order a cholangiogram, in which dye is injected into the bile duct system, which is then X-rayed to find leaks or injuries.

After the third surgery on July 6, 1988, plaintiff developed a high fever, gastrointestinal bleeding and adult respiratory syndrome.  On July 12, 1988, Dr. Damian transferred plaintiff to Cleveland Metropolitan General Hospital, n.k.a. Metro Health Medical Center, by Lifeflight helicopter.  Plaintiff was treated by Dr. Marc Eckhauser and Dr. Allen Cohen, who found a large volume of blood in his stomach.  On July 13 and 14, 1988, Dr. Eckhauser performed two surgeries, removing part of plaintiff's stomach and a substantial amount of dead intestine.  During the first of these operations, Dr. Eckhauser observed bile staining in the area of the pancreas, beneath the liver and around the bowel.

On July 20, 1988, Dr. Cohen performed a cholangiogram and discovered a leak in the common bile duct.  Dr. Cohen bypassed the leak in order to give the common bile duct time to heal itself.  Plaintiff was discharged from Cleveland Metro on November 10, 1988, but without the use of his left eye.  He was rendered sightless in that eye as the result of infection which originated in the area of his abdominal surgeries.  In addition, his surgeon, Dr. Eckhauser, described plaintiff as being a potential "gastrointestinal cripple" as a result of the removal of sections of his intestine and stomach.

Plaintiff commenced an action for medical malpractice in the Court of Common Pleas for Cuyahoga County on April 26, 1989 against Dr. Damian, Damian Clinic, Inc. ("defendants") and several other medical care providers who are not parties to this appeal.  Following a trial in July 1991, the jury rendered a unanimous verdict in favor of plaintiff in the total amount of $2,781,710.  In answering interrogatories submitted to it, the jury specifically found that the defendants, Dr. Damian and Damian Clinic, Inc., failed to meet the standards of care required of them by failing to order a cholangiogram in any of plaintiff's operations and by failing to transfer him to a hospital capable of treating his injuries.  The jury awarded plaintiff $800,000 as past damages and $1,981,710 in future damages, of which $1,396,125 was designated as compensation for pain and suffering and $585,585 represented lost wages.1

Defendants timely filed a joint motion for periodic payments of future damages pursuant to R.C. 2323.57(C).  Contemporaneously, plaintiff filed a motion for prejudgment interest pursuant to R.C. 1343.03(C).  The trial court granted plaintiff's motion for prejudgment interest.  However, the trial court found R.C. 2323.57, which provides for the periodic payment of future damages, to be unconstitutional, and therefore denied the defendants' motion.

The Eighth District Court of Appeals, in a unanimous opinion, affirmed the judgment of the trial court.

This cause is now before this court pursuant to the allowance of a motion to certify the record.

Spangenberg, Shibley, Traci, Lancione & Liber, Peter H. Weinberger, Robert V. Traci and James A. Marx, for appellee.

Jacobsen, Maynard, Tuschman & Kalur, Janis L. Small and Anthony P. Dapore; and Fritz Byers, for appellants.

Jeffries, Kube, Forrest & Monteleone and J. Michael Monteleone, urging affirmance for amicus curiae, Ohio Academy of Trial Lawyers.

Bricker & Eckler, James J. Hughes, Jr. and Catherine M. Ballard, urging reversal for amici curiae, Ohio Hospital Association and Ohio State Medical Association.

A. William Sweeney, J.      R.C. 2323.572  mandates that, upon timely motion of a party, awards of future damages in excess of $200,000 be paid periodically rather than in a lump sum in medical malpractice claims.  R.C. 1343.03(C),3  Ohio's prejudgment interest statute, provides for an award of interest to be granted in favor of successful tort plaintiffs where the trial court finds that the defendant failed to act in good faith to achieve pretrial settlement of the dispute.  We are called upon in this case to determine the constitutionality of each of these statutes.  We affirm the findings of the lower courts that R.C. 1343.03(C) survives a constitutional challenge, while R.C. 2323.57 does not.

I

Constitutionality of Ohio's Periodic Payment
of Future Damages Statute

Both lower courts found that R.C. 2323.57 violates the Right to Jury Trial Clause of Section 5, Article I and the Due Process Clause of Section 16, Article I of the Ohio Constitution.  For the reasons which follow, we affirm.

Section 5, Article I of the Ohio Constitution provides that:

"The right of trial by jury shall be inviolate, except that, in civil cases, laws may be passed to authorize the rendering of a verdict by the concurrence of not less than three-fourths of the jury."

It is well established that the right of trial by jury in this state is a fundamental and substantial right guaranteed by the Ohio Constitution.  Sorrell v. Thevenir (1994), 69 Ohio St.3d 415, 421, 633 N.E.2d 504, 510; Kneisley v. Lattimer-Stevens Co. (1988), 40 Ohio St.3d 354, 356, 533 N.E.2d 743, 746; and Cleveland Ry. Co. v. Halliday (1933), 127 Ohio St. 278, 284, 188 N.E. 1, 3.  This court has held there is a fundamental constitutional right to a trial by jury in negligence actions.  Sorrell, supra, 69 Ohio St.3d at 422, 633 N.E.2d at 510; Kneisley, supra, 40 Ohio St.3d at 357, 533 N.E.2d at 746.  Included in that right is the right to have a jury determine all questions of fact, including the amount of damages to which the plaintiff is entitled.  Sorrell, supra, 69 Ohio St.3d at 422, 633 N.E.2d at 510.

R.C. 2323.57(C) requires a trial judge, upon timely motion of any party, to order that any future damages award which exceeds $200,000 be paid in periodic installments rather than in a lump sum upon entry of judgment.  Moreover, R.C. 2323.57(E)(2) provides, in pertinent part, that "[t]he total amount paid under this division and the periodic payments plan shall not exceed the amount of the judgment."  R.C.

2323.57(F)(1) further mandates that, if a plaintiff dies prior to the receipt of all of the periodic payments, all payments for future medical expenses and for noneconomic loss, such as pain and suffering, loss of consortium, disfigurement, mental anguish and any other intangible loss, shall cease.

In Ohio, a plaintiff is entitled to an award of damages to compensate him for losses which he is reasonably certain to incur in the future. Pennsylvania Co. v. Files (1901), 65 Ohio St. 403, 407, 62 N.E. 1047; Roberts v. Mut. Mfg. (1984), 16 Ohio App.3d 324, 16 OBR 355, 475 N.E.2d 797. Under the common law of Ohio, future damages must be reduced to present value, and a defendant is entitled to a jury instruction to that effect. Maus v. New York, Chicago & St. Louis Rd. Co. (1956), 165 Ohio St. 281, 59 O.O. 366, 135 N.E.2d 253, paragraph one of the syllabus. Thus in Ohio, a jury is to return a verdict not in an amount reflecting the actual damages it deems to be reasonably certain to occur in the future, but rather in a reduced amount representing the present value of those actual damages.

It is evident that application of R.C. 2323.57 to a jury verdict does not merely mandate the manner in which a judgment shall be paid; rather, it requires the trial court to further reduce the jury's award of damages already once reduced to present value. Application of the statute quite simply results in a successful plaintiff receiving less than the jury awarded, and deprives the most severely injured victims of the benefits of investment.

That R.C. 2323.57 regulates more than merely the manner in which a judgment is paid and instead reduces the actual value of the verdict can be illustrated by comparing two hypothetical plaintiffs, both of whom receive future damages awards of $1,000,000. Assume the first plaintiff receives his entire judgment in a lump sum, but determines to use the proceeds to purchase an annuity. Assume the second plaintiff is subjected to application of R.C. 2323.57. Obviously the stream of income produced by investment in an annuity by the first plaintiff of the entire $1,000,000 will exceed the payout generated in the second case, where the entirety of the judgment (except the first $200,000) will be received in the future with no regard for the effect of inflation and no interest or other investment appreciation. This is assured by application of R.C. 2323.57(E)(2), which specifically provides that "[t]he total [lump sum] amount paid under this division and the periodic payments plan shall not exceed the amount of the judgment." It is readily apparent that R.C. 2323.57 effectively reduces a jury's award without the consent of the plaintiff.4

For the foregoing reason we find that R.C. 2323.57(C) invades the jury's province to determine damages, and that the statute violates a plaintiff's right to trial by jury as guaranteed by Section 5, Article I of the Ohio Constitution.

Nor is R.C. 2323.57 consistent with the Due Process Clause of the Ohio Constitution. Section 16, Article I of the Ohio Constitution guarantees that every person who suffers a legally compensable injury "shall have remedy by due course of law.***" This provision is the equivalent of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Direct Plumbing Supply Co. v. Dayton (1941), 138

Ohio St. 540, 544, 21 O.O. 422, 424, 38 N.E.2d 70, 72.

The trial court found R.C. 2323.57 to be "unreasonable, arbitrary, and [to have] no reasonable relationship to any good which may have been perceived by the Legislature to benefit the public health and welfare." The court of appeals concurred that R.C. 2323.35 is unconstitutional based upon due process grounds. We agree with the lower courts that R.C. 2323.57 violates the Due Process Clause of the Ohio Constitution for the reasons set forth in Sorrell, supra. There is insufficient evidence of a relationship between tort reform legislation and the availability or affordability of medical malpractice insurance. Id., 69 Ohio St.3d at 423, 633 N.E.2d at 511.

Therefore, we hold that R.C. 2323.57, which requires a trial court upon motion of a party to order that any future damages award in excess of $200,000 be paid in a series of periodic payments, is unconstitutional in that it violates the Right to Jury Trial Clause (Section 5, Article I) and the Due Process Clause of Ohio Constitution (Section 16, Article I).

II<br>Constitutionality of Ohio's Prejudgment<br>Interest Statute (R.C. 1343.03)

This court recently analyzed Ohio's prejudgment interest statute at length in Moskovitz v. Mt. Sinai Med. Ctr. (1994), 69 Ohio St.3d 638, 635 N.E.2d 331, but we were not in that case called upon to consider the constitutionality of R.C. 1343.03. The defendants herein make essentially the same argument we rejected in Kalain v. Smith (1986), 25 Ohio St.3d 157, 160, 25 OBR 201, 203, 495 N.E.2d 572, 574, i.e., that imposing a "good faith effort to settle" requirement forces a defendant to forgo the right of having a jury determine the existence of his liability in tort.

We reaffirm our holding in Kalain that "R.C. 1343.03(C) does not infringe upon a party's right to a jury trial[.]" Id. at 160, 25 OBR at 203, 495 N.E.2d at 574. It is true that a defendant who chooses to try a case before a jury rather than settle it risks the possibility that he may ultimately be found liable for a larger total judgment if prejudgment interest is awarded. However, the potential application of R.C. 1343.03 in no way precludes a defendant from insisting on exercising his right to trial by jury nor does it "create a financial barrier that prevents a *** party from taking his case to a jury." Kuenzer v. Teamsters Union Local 507 (1981), 66 Ohio St.2d 201, 203, 20 O.O.3d 205, 207, 420 N.E.2d 1009, 1011, fn. 6. The defendant's right of access to a jury for determination of factual issues remains unimpaired.

We similarly reject defendants' contention that R.C. 1343.03 imposes a penalty upon defendants for having exercised their right to a jury where prejudgment interest is awarded against them. In Digital & Analog Design Corp. v. N. Supply Co. (1992), 63 Ohio St.3d 657, 590 N.E.2d 737, we found such an award to be compensatory in nature rather than punitive. Writing for the majority, Justice Wright noted that "the "prejudgment interest statute is designed to compensate the aggrieved party for the delay encountered by the failure of the tortfeasor to negotiate in good faith," and "ensures that just compensation to the tort victim is not eroded by the dilatory tactics of the tortfeasor. ***" Id. at 660-661, 590 N.E.2d at

746. In such a case the defendant "allow[s] the interest monies on the [defendant's monetary reserves] to accumulate to the benefit of the party required to pay and to the detriment of the part to whom the money is to be paid ***." Dailey v. Nationwide Demolition Derby, Inc. (1984), 18 Ohio App. 3d 39, 41, 18 OBR 108, 110, 480 N.E.2d 110, 112. Where a defendant benefits monetarily as a result of failing to negotiate possible settlement in good faith, R.C. 1343.03 does not constitute a penalty, but, to the contrary, is wholly compensatory, and indeed equitable, in nature.

Similarly, it is the jury's function to determine the amount of damages suffered by a plaintiff. Since determining the amount of prejudgment interest awards is entirely separate and distinct from determinations of the amount of damages suffered by the plaintiff, and does not involve questions of fact, R.C. 1343.03 does not violate the fundamental constitutional right to trial by jury.

Defendant's contention that R.C. 1343.03 violates the Due Process Clause of the Ohio Constitution is unfounded. Prejudgment interest statutes have consistently been found to be constitutional by courts both in Ohio and elsewhere. See, e.g., Hardiman v. Zep Mfg. Co. (1984), 14 Ohio App.3d 222, 14 OBR 250, 470 N.E.2d 941; Mills v. Dayton (1985), 21 Ohio App. 3d 208, 21 OBR 222, 486 N.E.2d 1209; Edgerson v. Cleveland Elec. Illum. Co. (1985), 28 Ohio App. 3d 24, 28 OBR 34, 501 N.E.2d 1211. See, generally, Annotation, Validity and Construction of State Statute or Rule Allowing or Changing Rate of Prejudgment Interest in Tort Actions (1985), 40 A.L.R.4th 147. While this is not dispositive of our inquiry, we do agree with the overwhelming weight of authority that prejudgment interest statutes are rationally related to the legitimate goals of encouraging prompt resolution of disputes, and ensuring prompt payment of compensation to parties injured by tortious conduct.

For the foregoing reasons, we hold that R.C. 1343.03(C), which authorizes an award of prejudgment interest in a tort action against a defendant who failed to act in good faith to settle, does not violate either the Due Process Clause (Section 16, Article I) or the Right to Jury Trial Clause (Section 5, Article I) of the Ohio Constitution by imposing a penalty for exercise of that right.

The defendants further contend that the trial court improperly applied the standards established in Kalain in awarding prejudgment interest to plaintiff. The defendants assert that prejudgment interest cannot be awarded if a motion for summary judgment or directed verdict could not have been appropriately granted in plaintiff's favor on the issue of liability. Defendants contend that in such circumstances reasonable minds could differ on the issue of liability, thereby necessitating the conclusion that the defendant had a good faith, objectively reasonable belief of nonliability and was thus not required to make a monetary settlement offer or counteroffer. The defendants base this argument on the last sentence of the syllabus in Kalain which states: "If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer." Id., 25 Ohio St.3d 157, 25 OBR 201, 495 N.E.2d 572.

We decline to impose summary judgment or directed verdict analytical criteria into prejudgment interest proceedings. Existence of a good faith, objectively reasonable belief of nonliability does not excuse a defendant from the remaining Kalain obligations to (1) fully cooperate with discovery, (2) rationally evaluate risks and potential liability, and (3) refrain from unnecessary delaying maneuvers. Id. at syllabus. Moreover, the "good faith, objectively reasonable belief" language of Kalain must be "strictly construed so as to carry out the purposes of R.C. 1343.03." Moskovitz, 69 Ohio St.3d at 659, 635 N.E.2d at 348. The purposes of R.C. 1343.03 would not be furthered by construing the evidence most favorably to the party opposing a motion for prejudgment interest as a trial court must do when ruling on a motion for directed verdict or summary judgment, nor by limiting the examination of the defendant's conduct to the time of the trial or the evidence presented at trial. A defendant may well have fallen short of the good faith requirement of R.C. 1343.03 even where a trial court would have been justified in overruling a motion for summary judgment prior to trial, or a motion for directed verdict made during trial.

We have reviewed the record established in the prejudgment interest hearing held in the case at bar and find that the trial court was well within its discretion in ordering prejudgment interest pursuant to R.C. 1343.03. The trial court found that the defendants had stated a position of "no offer and no settlement in such unmistakably rigid terms" following presentation of plaintiff's initial settlement demand that plaintiff's presentation of any reduced demand would have been "a vain act" and that the defendants had thereby "effectively terminated all chance for good faith negotiation." The court concluded that the defendants had "not rationally evaluate[d] the essential risks of a plaintiff's verdict, and had failed to respond in good faith" to a good faith offer from the plaintiff. A trial court does not abuse its discretion in awarding prejudgment interest where, as here, a defendant "just says no" despite a plaintiff's presentation of credible medical evidence that the defendant physician fell short of the standard of professional care required of him, where it is clear that the plaintiff has suffered injuries, and where the causation of those injuries is arguably attributable to the defendant's conduct. We find the trial court's determinations on this issue wholly in accord with the purposes of R.C. 1343.03 and with the standards set forth in Kalain and Moskovitz, supra.

### III
### Alleged Evidentiary Error

The defendants argue that a defense expert's testimony should not be deemed inadmissible merely because it is expressed in terms of possibilities. In the case at bar, the trial court sustained an objection to the testimony of defense expert Dr. Donald Fry that "there are a host of blood vessels that could be responsible" for a leak of blood into plaintiff's stomach, advising the witness that "possibilities are not admissible." The defendants further argue that the trial court improperly precluded Dr. Fry from testifying that the plaintiff's bile duct injury was more likely to occur during

gastrectomy surgery. Defendants suggest that this evidence tended to prove that plaintiff's bile duct leak may have been a result of surgery performed by Dr. Eckhauser after plaintiff was transferred to Cleveland Metro, and not as a result of the actions of defendants or of the automobile accident.

The primary rule governing admissibility of expert testimony provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Evid.R. 702. An analysis of an expert's testimony in terms of whether it expresses a degree of certainty in excess of fifty percent may not in every case be conclusive of the admissibility of the expert's opinion. Accord Stinson v. England (1994), 69 Ohio St.3d 451, 633 N.E.2d 532 (no error in allowing defense expert to testify, in effect, that the event she believed had caused plaintiff's injuries was more likely than cause propounded by plaintiff). Similarly, the Rules of Evidence authorize exclusion of evidence, including expert testimony, where the court finds in a sound exercise of discretion that the probative value of the opinion is outweighed by the danger of undue prejudice or confusion of the issues (Evid. R. 403) or that the opinion is inadmissible pursuant to some other Rule of Evidence. The question whether any particular expert's testimony, standing alone, would satisfy the burden of proof required of a party is a separate and distinct issue which is decided according to criteria different from those used to determine admissibility.

Turning to the case at bar, we find that in answering the interrogatories propounded to it, this jury found that defendants failed to meet accepted standards of care based on defendant Damian's failure to timely order a cholangiogram and to transfer plaintiff to a hospital more capable of handling his injuries. The jury did not find professional negligence on the part of Dr. Damian in causing the bile duct leak. The court's refusal5 to allow Dr. Fry to testify more extensively concerning other possible causes of that leak would not have affected the jury's ultimate findings of negligence. We find on this record that error in limiting Dr. Fry's expert testimony, if any, can only be considered harmless.

Judgment affirmed.

Douglas, Resnick, F.E. Sweeney and Pfeifer, JJ., concur.
Moyer, C.J., and Wright, J., dissent.

FOOTNOTES:
1 Plaintiff sought no compensation for future medical expenses.
2 R.C. 2323.57 provides, in part: "(C) *** [I]f the total of the future damages described in division (B)(1)(b) of this section exceeds two hundred thousand dollars, then, at any time after the verdict or determination in favor of the plaintiff in question is rendered by the trier of fact but prior to the entry of judgment in accordance with Civil Rule 58, the plaintiff or the defendant in question may file a motion with the court that requests the court to include an order in the journal entry that the future damages in excess of

two hundred thousand dollars shall be paid in periodic payments rather than in a lump sum.  If such a motion is timely filed, the court shall include in the journal entry an order that includes all of the following:

"(1)  A requirement that the first two hundred thousand dollars in future damages be paid in a lump sum ***;

"***

"(2)  A requirement that the future damages in excess of the two hundred thousand dollars paid in a lump sum *** be used to fund a series of periodic payments over a period of time in accordance with divisions (D), (E), and (F) of this section." (Emphasis added.)

The full text of R.C. 2323.57 is reproduced as an appendix to this opinion.

3  R.C. 1343.03(C) provides as follows:

"Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."

4  Legislatively imposed remittiturs may well violate the doctrine of separation of powers.  See Murphy v. Edmonds (Md. 1992), 325 Md. 342, 380, 601 A.2d 102, 120 (Chasanow, J., dissenting), citing Sofie v. Fibreboard Corp. (1989), 112 Wash.2d 636, 652-654, 771 P.2d 711, 720-721.

5  In fact, the record shows that a great deal of "other cause" testimony by Dr. Fry was eventually allowed by the trial court.

APPENDIX

R.C. 2323.57 provides as follows:

"(A) As used in this section:

"(1) 'Economic loss' means any of the following types of pecuniary harm:

"(a) All wages, salaries, or other compensation lost as a result of an injury, death, or loss to person or property that is a subject of a civil action upon a medical, dental, optometric, or chiropractic claim;

"(b) All expenditures for medical care or treatment, rehabilitation services, or other care, treatment, services, products, or accommodations as a result of an injury, death, or loss to person or property that is a subject of a civil action upon a medical, dental, optometric, or chiropractic claim;

"(c) Any other expenditures incurred as a result of an injury, death, or loss to person or property that is a subject of a civil action upon a medical, dental, optometric, or chiropractic claim, other than attorney's fees incurred in connection with that action.

"(2) 'Future damages' means damages that result from an injury, death, or loss to person or property that is a subject of a civil action upon a medical, dental, optometric, or chiropractic claim and that will accrue after the verdict or determination of liability by the trier of fact is rendered in

that action.

"(3) 'Medical claim,' 'dental claim,' 'optometric claim,' and 'chiropractic claim' have the same meanings as in division (D) of section 2305.11 of the Revised Code.

"(4) 'Noneconomic loss' means nonpecuniary harm that results from an injury, death, or loss to person or property that is a subject of a civil action upon a medical, dental, optometric, or chiropractic claim, including, but not limited to, pain and suffering, loss of society, consortium, companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, or education, disfigurement, mental anguish, and any other intangible loss.

"(5) 'Past damages' means damages that result from an injury, death, or loss to person or property that is a subject of a civil action upon a medical, dental, optometric, or chiropractic claim and that have accrued by the time that the verdict or determination of liability by the trier of fact is rendered in that action.

"(6) 'Trier of fact' means the jury or, in a nonjury action, the court.

"(B)(1) In any civil action upon a medical, dental, optometric, or chiropractic claim that is tried to a jury and in which a plaintiff makes a good faith claim against the defendant in question for future damages that exceed two hundred thousand dollars, upon motion of that plaintiff or the defendant in question, the court shall instruct the jury to return, and the jury shall return, a general verdict and, if that verdict is in favor of the plaintiff, answers to interrogatories that shall specify all of the following:

"(a) The past damages recoverable by that plaintiff;

"(b) The future damages recoverable by that plaintiff, and the portions of those future damages that represent each of the following:

"(i) Noneconomic loss;

"(ii) Economic loss;

"(iii) Economic loss as described in division (A)(1)(a) of this section;

"(iv) Economic loss as described in division (A)(1)(b) of this section;

"(v) Economic loss as described in division (A)(1)(c) of this section.

"(2) In any civil action upon a medical, dental, optometric, or chiropractic claim that is tried to a court and in which a plaintiff makes a good faith claim against the defendant in question for future damages that exceed two hundred thousand dollars, upon motion of that plaintiff or the defendant in question, the court shall make its determination in the action and, if that determination is in favor of that plaintiff, make findings of fact that shall specify damages as provided in division (B)(1) of this section.

"(C) If answers to interrogatories are returned or findings of fact are made pursuant to division (B) of this section and if the total of the future damages described in division (B)(1)(b) of this section exceeds two hundred thousand dollars, then, at any time after the verdict or determination in favor of the plaintiff in question is rendered by the trier of fact but prior to the entry of judgment in accordance with

Civil Rule 58, the plaintiff or the defendant in question may file a motion with the court that requests the court to include an order in the journal entry that the future damages in excess of two hundred thousand dollars shall be paid in periodic payments rather than in a lump sum. If such a motion is timely filed, the court shall include in the journal entry an order that includes all of the following:

"(1) A requirement that the first two hundred thousand dollars in future damages be paid in a lump sum on a pro rata basis from among the amounts of damages awarded that represent the following four types of loss:

"(a) Noneconomic loss as specified pursuant to division (B)(1)(b)(i) of this section;

"(b) Economic loss as specified pursuant to division (B)(1)(b)(iii) of this section;

"(c) Economic loss as specified pursuant to division (B)(1)(b)(iv) of this section;

"(d) Economic loss as specified pursuant to division (B)(1)(b)(v) of this section.

"(2) A requirement that the future damages in excess of the two hundred thousand dollars paid in a lump sum pursuant to division (C)(1) of this section be used to fund a series of periodic payments over a period of time in accordance with divisions (D), (E), and (F) of this section.

"(D)(1)(a) If any party to a civil action upon a medical, dental, optometric, or chiropractic claim files a motion pursuant to division (C) of this section requesting that the future damages in excess of two hundred thousand dollars to be received by a plaintiff in the action be paid in a series of periodic payments, that plaintiff, within twenty days after the motion if filed, shall submit a periodic payments plan to the court. The plan may include, but is not limited to, a provision for a trust or an annuity, and may be proposed by that plaintiff alone or by that plaintiff and the defendant in question.

"(b) If that defendant and that plaintiff do not jointly submit a periodic payments plan, then, within twenty days after the motion requesting the payment of future damages in a series of periodic payments is filed pursuant to division (C) of this section, that defendant may submit to the court a periodic payments plan. If the defendant does so, the plan may include, but is not limited to, a provision for a trust of an annuity.

"(c) If that defendant and that plaintiff do not jointly submit a periodic payments plan and if that defendant does not separately submit a periodic payments plan pursuant to division (D)(1)(b) of this section, then, within ten days after that plaintiff submits a periodic payments plan, that defendant may submit to the court written comments relative to the periodic payments plan of that plaintiff. If that defendant and that plaintiff do not jointly submit a periodic payments plan and if that defendant separately submits a periodic payments plan pursuant to division (D)(1)(b) of this section, then, within ten days after that defendant submits the plan, that plaintiff may submit to the court written comments relative to the periodic payments plan of that defendant.

"(d) The court may modify, approve, or reject any submitted periodic payments plan.

"(e) After a periodic payments plan is approved, the future damages that are to be received in periodic payments shall be paid in accordance with the plan, including, if applicable, payment over to a trust or annuity provided for in the plan.

"(2) If a motion requesting the payment of future damages in a series of periodic payments is not filed pursuant to division (C) of this section with respect to any plaintiff in an action upon a medical, dental, optometric, or chiropractic claim, all future damages awarded to that plaintiff shall be paid in a lump sum.

"(3) The court shall specify in the entry of judgment in the civil action the terms of any approved periodic payments plan.

"(E)(1) The court shall include in any approved periodic payments plan adequate security to insure that the plaintiff in question will receive all of the periodic payments under the approved plan.  If the approved periodic payments plan includes a provision for an annuity, the defendant in question shall purchase the annuity from the following types of insurance companies:

"(a) An insurance company that the A.M.  Best Company, in its most recently published rating guide of life insurance companies, has rated A or better and has rated XII or higher as to financial size or strength;

"(b)(i) An insurance company that the superintendent of insurance, under rules adopted pursuant to Chapter 119. of the Revised Code for purposes of implementing this division, determines is licensed to do business in this state and, considering the factors described in division (E)(1)(b)(ii) of this section, is a stable insurance company that issues annuities that are both safe and desirable;

"(ii) In making determinations as described in division (E)(1)(b)(i) of this section, the superintendent shall consider the financial condition, general standing, operating results, profitability, leverage, liquidity, amount and soundness of reinsurance, adequacy of reserves, and the management of an insurance company, shall consider any other relevant factors, and shall be guided by the principle that the trier of fact in a tort action should be presented only with evidence as to the cost of annuities that are both safe and desirable for the plaintiffs in such an action who are awarded damages.  In making such determinations, the superintendent also may consider ratings, grades, and classifications of any nationally recognized rating services of insurance companies.

"(2) No plaintiff who is the subject of an approved periodic payments plan shall receive a lump sum payment that is less than the plaintiff's cost of litigation, including, but not limited to, attorney's fees, plus two hundred thousand dollars.  The total amount paid under this division and the periodic payments plan shall not exceed the amount of the judgment.

"(F) If a court orders a series of periodic payments of future damages in accordance with this section, the following rules shall govern those payments if the plaintiff in question dies prior to the receipt of all of them:

"(1) The liability for the portion of those payments that

represents future economic loss as specified pursuant to division (B)(1)(b)(iv) of this section and future noneconomic loss of that plaintiff as specified pursuant to division (B)(1)(b)(i) of this section and that is not due at the time of his death shall cease at that time;

"(2) The liability for the portion of those payments not described in division (F)(1) of this section shall continue, but the payments shall be paid to the heirs of that plaintiff as scheduled in and otherwise in accordance with the approved periodic payments plan or, if the approved payments plan does not contain a relevant provision, as the court shall order.

"(G)(1) Nothing in this section precludes a plaintiff in question and a defendant in question from mutually agreeing to a settlement of the action.

"(2) Except as provided in division (C)(2) or (F) of this section, nothing in this section increases the time for filing any motion or notice of appeal or taking any other action relative to a civil action upon a medical, dental, optometric, or chiropractic claim, alters the amount of any verdict or determination of damages by the trier of fact in a civil action upon a medical, dental, optometric, or chiropractic claim, or alters the liability of any party to pay or satisfy any such verdict or determination.

"(H) This section does not apply to civil actions against political subdivisions of this state that are commenced under or are subject to Chapter 2744. of the Revised Code or to civil actions against the state in the court of claims."

Moyer, C.J., dissenting. Once again, the majority has declared unconstitutional an Act of the General Assembly that is neither unconstitutional by any accepted standard of review nor bad public policy.

Consistent with my views in Morris v. Savoy (1991), 61 Ohio St.3d 684, 576 N.E.2d 765, and Sorrell v. Thevenir (1994), 69 Ohio St.3d 415, 633 N.E.2d 504 (dissenting), I would hold that the periodic payment plan for future awards provided by R.C. 2323.57 violates neither a plaintiff's right to trial by jury nor his right to due process.

In determining the constitutionality of any statute, the analysis must begin with the well-established rule that all legislative enactments enjoy a strong presumption of constitutionality. Sorrell, supra, at 418-419, 633 N.E.2d at 508, citing State ex rel. Dickman v. Defenbacher (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus. Therefore, the party challenging the statute has the burden of proving that it is unconstitutional, and if reasonable doubt exists, the doubt must be resolved in favor of the statute's validity. Moreover, it is not the function of this court to assess the wisdom or policy of a statute but, rather, to determine whether the General Assembly acted within its legislative power. State ex rel. Bishop v. Mt. Orab Village Bd. of Edn. (1942), 139 Ohio St. 427, 438, 22 O.O. 494, 498, 40 N.E.2d 913, 919.

The majority misconstrues the scope of Section 5, Article I of the Ohio Constitution. I agree with the majority that the right to a trial by jury includes a determination by the jury of all questions of fact, as well as the amount of compensatory damages to which the plaintiff is entitled. Once the jury has

resolved the facts and assessed the damages, however, the constitutional right is satisfied.  The inviolate right to trial by jury does not mean the award of damages is inviolate.  Surely, if the rationale used by the majority to support its judgment is extended beyond this case, judges should no longer be authorized to enter judgments notwithstanding the verdict or order remittiturs of a jury's determination of damages.  While a party has a constitutional right to have a jury assess damages for injury, the party has no right to have a jury dictate the legal process by which the jury award is satisfied.  It is a startling new thought that the legislative branch does not have the constitutional authority to create that legal process.  It is the province of the legislative branch to determine policy issues relating to the method by which jury awards are satisfied.

R.C. 2323.57 does nothing more than provide a remedy in the form of periodic payments of the award determined by the jury or by a court in a bench trial.  R.C. 2323.57 does not infringe upon the right to a jury trial because the statute does not apply until after the jury has completed its assigned function in the judicial process.  To hold otherwise runs contrary to our common law and Rules of Civil Procedure which provide the trial court with plenary control over judgments.

The majority also finds that R.C. 2323.57 violates the due process of law provision of Section 16, Article I of the Ohio Constitution.  Because no fundamental right or suspect class is involved, our standard for review of the statute should be a "rational basis" test.  We have held that under this test "'[a] legislative enactment will be deemed valid on due process grounds "*** [1] if it bears a real and substantial relation to the public health, safety, morals or general welfare of the public and [2] if it is not unreasonable or arbitrary."'" (Citations omitted.)  Morris, 61 Ohio St.3d at 688-689, 576 N.E.2d at 769.  Certainly, a statute designed to respond to the growing concerns regarding the continued delivery of health care to the citizens of Ohio at affordable costs survives such minimal scrutiny.  R.C. 2323.57 is simply an economic regulation and is entitled to wide judicial deference.

Because no fundamental right of the plaintiff has been violated and periodic payment of future damages provided by R.C. 2323.57 is a rational exercise of the General Assembly's authority, I dissent from the majority's decision.

Wright, J., concurs in the foregoing dissenting opinion.