DECISION
Plaintiff-appellant, Nute Woods, appeals from the judgment of the Ohio Court of Claims finding him twenty percent responsible for his own injuries and defendant-appellee, Ohio Department of Rehabilitation and Correction ("ODRC"), eighty percent responsible. The trial court assessed appellant's damages at $10,000, thus awarding him $8,000 net total.
In March 1994, appellant was incarcerated at the Madison Correctional Institution ("MCI"). Appellant worked in the prison work program known as Ohio Penal Industries ("OPI") as a member of the asbestos abatement crew which is comprised of inmates from MCI whose job was to remove asbestos from various buildings and facilities around the state.
On March 22, 1994, appellant, along with seven other inmates were being transported in a van owned by ODRC to remove asbestos from the powerhouse behind the London Correctional Institution ("LCI"). The distance between MCI and the job site is less than two miles. The van used on the day in question was not the type normally used for the purpose of transporting prisoners. As such, it had limited seating areas, so most of the passengers would have to ride in the cargo section of the van. When appellant was picked up, all the seats were taken by other prisoners so he went into the cargo section and sat on a milk crate turned upside down.
The van proceeded to travel the distance between MCI and LCI. As the van made a turn during the trip, the milk crate appellant was sitting on tipped over, causing an injury to his left knee. While x-rays taken shortly after the accident showed no evidence of fracture, dislocation, or significant skeletal joint abnormalities, appellant did suffer a contusion to his knee that required subsequent medical care.
On January 6, 1997, appellant filed a complaint in the Ohio Court of Claims against ODRC, alleging that appellee was negligent in transporting him to the work site. On December 4, 1997, a trial was held on the issue of liability. The trial court, in a decision rendered on May 27, 1998, found that ODRC was not negligent. On appeal to this court, we reversed the trial court's decision and remanded the case for further proceedings. We held that ODRC was negligent in transferring appellant to a job site in a cargo van that did not have sufficient seating for all of the passengers, causing him to fall and injure his left knee when the milk crate, which he was using as a seat, tipped over. We remanded the case to the trial court for further proceedings with regard to the issues of proximate cause, comparative negligence, and damages. See Woods v.Ohio Dept. of Rehab. and Corr. (1999), 132 Ohio App.3d 780.
On remand, the issues before the trial court were whether appellant's damages were proximately caused by ODRC's negligence; whether appellant's own negligence proximately caused his injuries; and, if necessary, the extent of appellant's damages.
In a decision issued on February 11, 2000, the trial court issued its ruling upon which this appeal is taken. In his appeal, appellant asserts the following assignments of error:
 1. The Trial Court committed error in holding that Defendant-Appellee proved by a preponderance of the evidence that Plaintiff-Appellant Nute Woods breached his duty of ordinary care and that breach of duty was 20% responsible for his own injuries.
 2. The Trial Court committed error in holding that Nute Woods suffered no injury that lasted beyond the end of 1994.
 3. The Trial Court committed error in holding that Plaintiff was only entitled to $10,000 for his injuries.
 4. The Trial Court committed error in holding that OAC § 5120-3-05(F) is both lawful and constitutional.
 5. The trial court committed error in holding that Plaintiff has already been paid his lost wages plus accrued sick time pursuant to OAC § 5120-3-05(F).
In his first assignment of error, appellant contends that the trial court's decision that appellant was twenty percent responsible for his injuries, was against the manifest weight of the evidence. Appellant further contends that even if appellee proved by preponderance of the evidence that appellant was responsible for his own injuries, his negligence should not have been assessed at more than five percent.
Judgment supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279. As a reviewing court, we must presume that the trial court's findings of fact are correct, as the trial judge is in the best position to view the witnesses, observe their demeanor, gestures, and voice inflections and weigh the credibility of their testimony. Seasons Coal Co. v. City of Cleveland (1984), 10 Ohio St.3d 77.
The trial court had before it the testimony of appellant along with two of the inmates who were on the van ride. The testimony reflects that appellant grabbed the milk crate as he entered the cargo section of the van without giving much, if any, thought to any alternatives. It also appears from the record below that appellant was preoccupied in a side conversation throughout the trip. He did not pay attention to what the driver was doing so that he could be prepared for such a sudden move, which was important as he was sitting on an unstable object. It was not appellant's first time in the van, and he was aware of the seating arrangement. The other inmates in the van testified that they normally would have paid attention to the driver and prepared for the turns by bracing themselves. Appellant failed to do so in order to protect himself.
The testimony above indicates that the trial court's judgment was supported by more than "some" competent, credible evidence. Thus, the trial court's finding is not against the manifest weight of the evidence, either as to the existence of comparative negligence or the percentage thereof.
Appellant's first assignment of error is overruled.
In his second assignment of error, appellant contends that the trial court's finding that appellant suffered no injury beyond 1994 is against the manifest weight of the evidence. The trial court found that appellant failed to prove that his knee injury is permanent. Thus, the court concluded that appellant was not entitled to recover damages beyond the end of 1994. We disagree.
Dr. Seasons' testimony concerning the medical record of appellant clearly indicates that he was receiving medical treatment, while in the custody of appellee, well beyond the end of 1994. More specifically, the medical records show that on March 24, 1995, ODRC doctors prescribed that appellant be issued a cane to use until his "left knee is rehabilitated." About two years later appellant was prescribed medication for pain to be taken twice a day or as necessary. Then, on March 3, 1997, the record indicates that the doctors had ordered a knee brace for appellant's left knee, a cane for ambulation, and medicine for his other medical problems, all of which related to the knee injury in question and were based upon records of prison physicians. Based on this testimony, appellant argues that the trial court's finding that he did not suffer any injury after 1994 was not supported by sufficient evidence. We agree.
Appellee argues that because medical examinations conducted by Dr. Seasons and appellee's own medical expert, Dr Hauser, revealed no "objective" symptoms, then appellant must have been completely cured. This argument is refuted by the medical records appellee has kept on appellant as previously stated. It must be presumed that Dr. Seasons would not have ordered treatment without the need therefor. Therefore, we find that the evidence does not support the trial court's finding that appellant suffered no injury beyond the end of 1994.
Appellant's second assignment of error is sustained.
In his third assignment, of error appellant contends that the $10,000 award was so low as to warrant reversal by this court. The trial court based its determination on the conclusion that appellant suffered no injury beyond the end of 1994. We will not disturb the court's finding in as much as it awarded appellant $10,000 (minus twenty percent) for his damages up to the end of 1994. It is within the discretion of the fact finder to determine the amount of an award, which is not grossly disproportionate to the injuries and elements of damages proved. Such award will be reversed on appeal only where the fact finder abused its discretion.
However, we found above that appellant's injury extended beyond the end of 1994. We therefore remand this issue to the trial court to determine appellant's damages for his injury after 1994. As indicated above, the record supports the finding that appellant continued to receive treatment for his knee injury well beyond 1994. Appellant's third assignment of error is sustained in part.
In his fourth assignment of error, appellant contends that Ohio Adm. Code 5120-3-05(F) is unlawful and unconstitutional as applied, and should not be used to reduce his damages for lost wages. Appellant advances several arguments in this regard: that as a condition precedent to the operation of Ohio Adm. Code 5120-3-05(F), it must be proven that appellant was reclassified; that Ohio Adm. Code 5120-3-05(F) is unconstitutional in that it violates his due process and equal protection rights under both the United States and Ohio Constitutions; that it violates his statutory right under R.C. 2743.02(A)(1); that it is an unlawful delegation of power; and that it is unconstitutional because it violates his open court rights guaranteed under the Ohio Constitution. We disagree.
Ohio Adm. Code 5120-3-05(F) provides in relevant parts that:
 If an inmate is unable to work because of a job-related injury and has exhausted his sick leave benefits, he will receive up to thirty days pay at his current pay grade level. If an inmate is unable to work for more than thirty consecutive days, he will be reclassified to a non-OPI institution assignment. In such case the inmate will thereafter be compensated pursuant to rule 5120-3-08 of the Administrative Code, rather than this rule.
Appellant argues that pursuant to this provision, if the work-related injury lasts more than thirty days and the injured inmate is not reclassified, he or she should continue to receive full pay until such reclassification takes place. Accordingly, appellant argues that his full-scale pay should have been continued between the time of his injury on March 22, 1994 and August 1997, when appellant had a heart attack and he readily admits that he could no longer continue to do the asbestos removal work even without the knee injury.
The trial court held that the language of subsection (F) constitutes an absolute bar upon further compensation after the thirty-day limit whether or not the prisoner has been reclassified. The trial court further concluded that any compensation that appellant may be entitled to must be given under Ohio Adm. Code 5120-3-08. Appellant submitted no evidence that he is due any compensation under Ohio Adm. Code 5120-3-08. We agree with the trial court's findings and conclusions on this issue. There is nothing in the record to indicate that appellant is entitled to any further compensation beyond the thirty-day period. Therefore, the trial court's findings here will not be disturbed.
Next, appellant argues that Ohio Adm. Code 5120-3-05 is unconstitutional in that it violates his due process and equal protection rights under the Ohio and United States Constitutions. The trial court found no constitutional violation because, according to the court, the only limitation on appellee's decisions regarding the compensation of injured OPI inmates is that the decision be rationally related to the objective of maintaining public safety while securing work for as many inmates as possible. We agree. The issue here does not involve a fundamental right nor a suspect classification to warrant a more stringent standard of review. We agree with the trial court that rational basis is the appropriate standard. Appellant cites Sorrell v. Thevenir (1994),69 Ohio St.3d 415, and Galayda v. Lake Hospitals Sys., Inc. (1994),71 Ohio St.3d 421, in support of his assertion that the denial of benefits beyond the thirty-day limit is a taking of private property which requires due process of law. Neither of the above-cited cases, however, deals with prisoners or inmates at state institutions. Section41, Article II, Ohio Constitution, gives the ODRC the discretion in how best to allocate its limited resources in order to employ as many qualified prisoners as possible. The trial court refused to substitute its own judgment for that of ODRC, and we do the same in this appeal.
Appellant then argues that Ohio Adm. Code 5120-3-05(F) violates his statutory rights under R.C. 2743.02(A)(1). Appellant recognizes that this issue was not raised below and he points to no error committed by the trial court relevant to this issue. Nevertheless, appellant includes this issue in his brief.
R.C. 2743.02(A)(1) states: "The state hereby waives its immunity from liability and consents to be sued, and have its liability determined, in the court of claims created in this chapter in accordance with the same rules of law applicable to suites between private parties * * *." Appellant contends that Ohio Adm. Code 5120-3-05(F) violates the above statute in that it prevented the trial court from determining the state's liability in accordance with the same rules of law applicable to suits between private parties. To support his contention appellant citesGalayda, supra. In Galayda the statute at issue was R.C. 2323.57 which required awards of future damages in excess of $200,000 to be paid periodically rather than in a lump sum. See Galayda, supra, at 424. This is distinguishable from the case at bar where the issue is liability, rather than how future damages are to be paid to a given plaintiff. Once the damages are determined, they are the property of the plaintiff and may not be taken without due process of law. The Galayda's court found R.C. 2323.57 unconstututional because it encroached upon the jury's province in determining damages, once liability had been established.
Appellant further argues that Ohio Adm. Code 5120-3-05(F) is an unlawful delegation of power. Woods asserts that the Ohio legislature did not delegate to the ODRC the right to limit a given inmate's damages after being injured by ODRC's negligence.
When administrative rules are properly promulgated, they are to be given the force and effect of law. Chicago Pacific Corp. v. Limbach
(1992), 65 Ohio St.3d 432. However, an administrative rule that is unreasonable, arbitrary, discriminatory, or in conflict with law is invalid and unconstututional because such rule surpasses administrative powers and constitutes legislative function. Midwestern College ofMassotherapy v. Ohio Med. Bd. (1995), 102 Ohio App.3d 17.
In the case at bar we do not find the administrative rule at issue to be unreasonable, arbitrary, or discriminatory. Neither is it in conflict with Ohio law. The general assembly has authorized the ODRC to adopt rules of rehabilitation and correction as prescribed by the Ohio Revised Code. See R.C. 5145.14 to 5145.162.
Lastly, under his fourth assignment of error, appellant argues that Ohio Adm. Code 5120-3-05(F) is unlawful and unconstitutional in that it violates his open court rights guaranteed by the Ohio Constitution. Section 16, Article I, Ohio Constitution states: "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay."
There is nothing in the record below referencing this issue. As to the constitutional provision above, we do not believe that it has been violated. Appellant's access to the courts has not been hindered in any way because of the operation of Ohio Adm. Code 5120-3-05(F).
Accordingly, we find that Ohio Adm. Code 5120-3-05(F) is lawful and constitutional, and therefore appellant's fourth assignment of error is overruled.
In his fifth and final assignment of error, appellant contends that the trial court committed reversible error in holding that appellant has already been paid his lost wages and accrued sick time pursuant to Ohio Adm. Code 5120-3-05(F). Appellant's contention here is that the trial court's decision is against the weight of the evidence.
As indicated previously, we sit as a reviewing court and therefore must presume that the trial court's findings of fact are correct, for the trial judge is in the best position to view the witnesses and weigh the credibility of their testimony. If appellant failed to convince the trial court that he was not paid his lost wages and accrued sick leave, it is not for us to substitute our judgment for that of the trier of fact. The burden is on appellant to prove by preponderance of the evidence that he was due and was not paid the sums alleged. The record does not show that appellant met his burden. Therefore, appellant's fifth assignment of error is overruled.
Appellant's first, fourth and fifth assignments of error are overruled. Appellant's second assignment of error is sustained and his third assignment of error is sustained in part and overruled in part. The case is remanded to the trial court to find, on the record previously made, the monetary value of injuries to appellant after 1994 and to add the amount so found, (minus twenty percent), to $8,000, which shall then be entered as the final judgment of the trial court.
Judgment affirmed in part; reversed in part, and cause remanded withinstructions.
PETREE and KENNEDY, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.