OPINION
Defendant-appellant, James J. Skiffey, Jr., D.D.S. ("appellant"), appeals from the jury verdict from the Trumbull County Court of Common Pleas in favor of plaintiff-appellee, Clemens Borucki ("Borucki" or "appellee"), in a dental malpractice action. Appellant also appeals from the award of prejudgment interest to Borucki.
On June 9, 1999, Borucki filed a complaint for dental malpractice, naming appellant as defendant. The parties failed to settle the dispute and the case proceeded to trial by jury. The jury returned a verdict for two hundred thirty-five thousand dollars ($235,000) in Borucki's favor. Appellant has appealed from this verdict.
Borucki filed a motion for prejudgment interest. The trial court held a hearing on the matter. The trial court granted Borucki's motion for prejudgment interest made pursuant to R.C. 1343.03(C). The trial court determined appellant did not make a good faith effort to settle the case. The trial court found appellant did not fully cooperate with discovery proceedings because appellant did not apprise either Borucki or his attorney of the actual circumstances surrounding the incident. The trial court specifically noted appellant's version of events had changed substantially by trial. The trial court further found appellant did not rationally evaluate his risk and potential liability. Appellant's own expert witness did not dispute appellant's negligence, yet appellant still went forward on this issue as well as damages. The trial court found appellant's failure to inform Borucki of the exact instrument involved led to appellee's delay in securing the services of an expert witness. The trial court determined appellant's offer made near the start of trial was substantially less then what the case warranted. As a result, the trial court awarded Borucki prejudgment interest. Appellant has appealed from this judgment. The two appeals have been consolidated for purposes of disposition.
Appellant raises the following assignments of error for review:
 "1. The jury verdict was the result of passion and prejudice created by plaintiff's improper closing argument.
 "2. The trial court incorrectly awarded plaintiff prejudgment interest."
 In his first assignment of error, appellant contends the jury's verdict was the result of passion and prejudice stemming from improper closing argument by Borucki's counsel. Appellant asserts that, during closing argument, Borucki's attorney repeatedly asked the jury to send a message to the professional community by awarding a significant verdict to the plaintiff.
Counsel is afforded great latitude in closing argument. Pang v. Minch
(1990), 53 Ohio St.3d 186, paragraph two of the syllabus. An appellate court reviews a claim of improper closing argument under the abuse of discretion standard. The trial court's decision regarding the presentation of closing argument by counsel will not be reversed absent an abuse of that discretion. Sinea v. Denman Tire Corp. (1999),135 Ohio App.3d 44 . An abuse of discretion connotes more than an error of law or judgment. Rather, it implies the trial court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
Generally, a judgment will not be reversed on the basis of trial counsel's misconduct during arguments unless a proper and timely objection is made so that the trial court may take curative action.Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, 121. Where no objection is made, a trial court may sua sponte take action to nullify the prejudicial effect of statements which grossly and persistently abuse the privilege given counsel in closing argument. Clark v. Doe (1997),119 Ohio App.3d 296.
In Pesek v. University Neurologists Assn. (2000), 87 Ohio St.3d 495, the Supreme Court of Ohio recently addressed the issue of improper closing argument. The court again stressed that the trial judge has a responsibility to prohibit a gross injustice from being perpetrated by interfering to insure that the atmosphere is not surcharged with passion and prejudice. The court stated that a new trial is warranted if there is room for doubt that the verdict was rendered on the evidence or if it may have been influenced by improper remarks by trial counsel. Id. at 502. Doubt should be resolved in favor of the defeated party.
Appellant contends appellee's counsel repeatedly urged the jury to render a verdict large enough to send a message to health care professionals to stop this sort of treatment from happening to others. Appellant argues that, by asking the jury to send a message to prevent this level of care in the future, Borucki's attorney in effect requested punitive damages.
A review of appellee's closing argument shows that counsel did make reference to the quality of care in the community. Borucki's attorney told the jury they were the conscience of the community and that the outcome in the case would be heard. He stated the verdict could put a stop to the kind of treatment given to Borucki by appellant. Appellee's trial counsel stated a verdict large enough to fully compensate Borucki would raise the level of care in the community.
However, appellant only objected after the attorney stated appellant had led appellant's expert witness astray by first informing the witness that Borucki knocked the pin holder from appellant's hand. Appellee's counsel stated that this behavior was dishonest and that a large verdict which would fully compensate Borucki would put an end to the behavior. Borucki's attorney asked for a verdict of five hundred thousand dollars ($500,000) to fully compensate the plaintiff for his fifteen thousand dollars ($15,000) in medical expenses, the three invasive procedures, and the coughing and pain caused by the pin holder's presence in Borucki's lung.
The allusions to sending a message to the local medical community should not have been included in appellee's closing argument. This argument was not based upon the relief sought. Appellee never pled a cause of action which would have entitled him to punitive damages. However, appellant did not object to a majority of the argument. In fact, there were only two objections made to this line of argumentation. Appellant did request a curative instruction, but not until the jury had begun its deliberations. Appellant's request was untimely and the trial court determined such an instruction was not needed. The absence of significant objection leaves us with the alternative of applying a plain error standard to a civil matter. We decline to do so in this instance because this case does not rise to the level of a manifest miscarriage of justice.
Further, the jury's award of less than half of what appellee's attorney requested in closing argument demonstrates that the jury was not led astray by that argument. And, in light of the continuing and apparently permanent discomfort and emotional stress suffered by appellee, the verdict is not inherently unreasonable.
Appellant also states Borucki asked the jury to compensate him for his attorney fees, expenses for hiring an expert witness, and for taking the depositions of the doctors. The trial court sustained appellant's timely objection to this argument. It is presumed that a jury follows the instructions given to it by the trial court. Pang, supra, at paragraph four of the syllabus. Appellant has not demonstrated any prejudice that was not cured by the trial court's admonishment to the jury that it not consider any costs associated with the suit.
Based upon the lack of significant objection and the evidence adduced at trial, the jury's verdict does not appear to have been rendered to punish appellant or to send a message to the community. The jury's verdict is supported by the evidence admitted at trial. Appellant's first assignment of error lacks merit.
Appellant's second assignment of error disputes the award of prejudgment interest. Appellant submits the trial court abused its discretion in making the award because he fully cooperated in discovery, rationally evaluated his risks and potential liability, did not delay the proceedings, and made a good faith monetary offer to Borucki to settle the dispute.
R.C. 1343.03(C) governs prejudgment interest in a tort case. It provides:
 "Interest on a judgment, decree or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."
 A trial court's decision on the award of prejudgment interest is reviewed under an abuse of discretion standard. Schafer v. RMS Realty (2000), 138 Ohio App.3d 244 . The party seeking prejudgment interest bears the burden of showing that the opposing party did not make a good faith effort to settle the case. Moskovitz v. Mt. Sinai Med. Ctr. (1994), 69 Ohio St.3d 638. A judgment awarding or denying a party's motion for prejudgment interest will not be reversed absent an affirmative showing that the underlying decision is not supported by some competent, credible evidence. Loder v. Burger
(1996), 113 Ohio App.3d 669.
The dissent employs a good faith analysis that emphasizes the amount of the offer in relationship to medical expenses and the timing of the defendant's offer (one week) before trial. While these are some of the factors involved in determining whether a party has made a good faith effort to settle, these factors constitute only one of the four elements of the prejudgment interest "good faith" legal analysis enumerated by the Ohio Supreme Court in Kalain v. Smith (1986), 25 Ohio St.3d 157, syllabus. Solely relying on the amount and timing of a settlement offer would not achieve the statutory purpose of R.C. 1343.03(C) to promote settlement of cases before trial. Indeed, if we (a) ignore a party's lack of (i) cooperation in discovery (which in this case included misleading and inconsistent factual accounts and legal positions by appellant, which cannot be condoned merely as "solidified" positions resulting from "the contentious environment of discovery") and (ii) rational evaluation of one's risk and liability (which in this case, in part, was caused by appellant's providing his own expert witness with an inconsistent account of the events), or (b) ignore unnecessary delay caused by a losing party's conduct, we create an environment in which litigants can undertake such dilatory misconduct and then seek absolution one week before trial by simply making a monetary offer at a multiple of the medical damages. Such an approach would encourage gamesmanship by litigants, not settlement.
Additionally, an appellate court should not and cannot substitute its judgment for that of the trial court with respect to an award of prejudgment interest. It is not this court's function to determine whether an offer five times the amount of medical expenses is reasonable or whether an award of prejudgment interest is an exercise in intellectual gymnastics. Rather, our review is limited to the application of the abuse of discretion standard. In this case, based on the four-prong Kalain test, the trial court's award of prejudgment interest is supported by some competent, credible evidence and, therefore, does not constitute an abuse of discretion.
A party will be deemed to have made a good faith effort to settle if the party (1) fully cooperated in discovery, (2) rationally evaluated his or her risks and potential liability, (3) did not attempt to unnecessarily delay the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. Kalain v. Smith (1986), 25 Ohio St.3d 157, syllabus. In determining whether the efforts are reasonable, the trial court is not limited to the evidence presented at the prejudgment interest hearing. The court also may review the evidence presented at trial, as well as its prior rulings and jury instructions, especially when considering such factors as the type of case, the injuries involved, applicable law, and the available defenses. Galmish v. Cicchini (2000), 90 Ohio St.3d 22. The evidence does not have to be construed most favorably for the party opposing the motion. Galayda v. Lake Hosp. Sys., Inc. (1994),71 Ohio St.3d 421.
The trial court found that appellant's inconsistent account of the events caused delay in the proceedings because it caused appellant's own expert to evaluate the evidence based upon the erroneous assumption that Borucki knocked the pin holder from appellant's hand. Further, appellant never advised appellee when he abandoned this story. If appellee's attorney had been aware earlier that appellant was no longer completely blaming Borucki for causing the incident, discovery would have proceeded along swifter avenues. The trial court did not abuse its discretion by finding that appellant's actions delayed discovery.
The trial court determined that appellant did not disclose to Borucki that he had aspirated a pin holder until well after legal proceedings were underway. Borucki consistently stated that appellant never told him what had gone down his throat. Appellee's attorney testified that he believed Borucki aspirated a drill bit based upon the x-ray. He proceeded under the belief that appellant did not sufficiently tighten a drill bit and that negligence would not be in dispute based upon this belief. Appellant's counsel was aware appellee believed the foreign object to be a drill bit as late as November 19, 1997, yet there is no indication in the record that appellee's attorney was made aware of this fact. Appellee's attorney would have obtained an expert witness much sooner in the proceedings had he been aware of the true nature of the aspirated object.
By failing to inform his own legal counsel that appellee was not responsible for aspirating the pin holder, appellant caused his attorney to evaluate the case at a much lower level. Even as late as March 18, 1999, appellant's counsel had advised defense expert witnesses that the pin holder was dropped because appellee gagged and reared up out of the dental chair. Based upon this information, Dr. Snelson, appellant's expert witness, opined that Borucki caused the incident and should assume responsibility for his own injuries. Further, the defense did not inform appellee's counsel after Dr. Snelson reconsidered his understanding of the cause of the incident. Dr. Snelson's initial determination that appellant was not liable was based upon his belief appellee had knocked the pin holder from appellant's hand. The change in appellant's expert's opinion was not communicated to appellee's counsel.
Appellant, at first, reluctantly offered to settle the case for medical expenses plus ten thousand dollars ($10,000), for a total of twenty-five thousand dollars ($25,000). At that point, Borucki's demand stood at one hundred fifty thousand dollars ($150,000). A review of the record demonstrates that appellant's attorney believed liability was in doubt based on appellant's claims that he dropped the pin holder because of appellee's actions. By June of 1999, appellant agreed to increase his offer for settlement by offering forty thousand dollars ($40,000). An expert's report blaming appellee for knocking the pin holder from appellant's hand was attached. The offer soon was increased to fifty thousand dollars ($50,000). Appellee's attorney reduced his offer to one hundred thousand dollars ($100,000), but repeatedly informed defense counsel he felt the case was worth six figures.
Appellee's counsel felt his case grew stronger as trial approached. By August of 1999, the appellant's counsel believed appellant would not prevail at trial on liability but still thought the evidence of damages was not compelling. Defense counsel stated appellee's age and that the only recommended treatment was an annual chest x-ray which would not result in a verdict over eighty thousand dollars ($80,000). Defense counsel seemed to consistently discount Borucki's injuries, including monthly coughing spells and chest pain, and the medical procedures he endured in an effort to retrieve the pin holder. Defense counsel even recognized that appellant would only be an average witness while considering Borucki to be an excellent witness and very likeable. Even with this observation and evidence of Borucki's damages, the defense consistently under-evaluated the possible amount of damages. The defense did make a last minute settlement offer of seventy-five thousand dollars ($75,000) the week before trial. In response, the plaintiff lowered its demand for one day to ninety-seven thousand five hundred dollars ($97,500). This was as close as the parties ever came to settlement. Appellant's act of misrepresenting the facts to his attorney for months caused the defense to wrongly evaluate the case and protracted the proceedings because the risks and potential liability were not reasonably evaluated.
In light of the substantial uncommunicated evidence of appellant's negligence, as well as the fact that appellee still has the pin holder within his lung tissue, the trial court did not abuse its discretion by finding appellant failed to make a good faith offer to settle the dispute prior to trial. Appellant's second assignment of error is overruled. The judgment of the trial court is affirmed.
 _______________________________________ JUDGE DIANE V. GRENDELL
O'NEILL, P.J., dissents with Dissenting Opinion, CHRISTLEY, J., concurs.