DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 INTRODUCTION {¶ 1} Samuel Hoffmeyer was convicted of felonious assault for allegedly hitting John O'Brien with an aluminum baseball bat, breaking his left elbow and left eye socket. This Court affirms his conviction because it is supported by sufficient evidence and is not against the manifest weight of the evidence; because the trial court did not err by admitting into evidence a bat like the one he allegedly used to hit Mr. O'Brien or by denying his motion for a mistrial based on alleged prosecutorial misconduct; and because the trial court's supposed refusal to allow *Page 2 
Mr. Hoffmeyer's lawyer to inquire into details concerning Mr. O'Brien's prior convictions for domestic violence does not appear in the record.
 FACTS {¶ 2} Beginning in April 2005, John O'Brien, Samantha Kyer, and their infant daughter, Page, were living in a house in Akron. During July of that year, however, Mr. O'Brien and Ms. Kyer broke up, and he moved out, although he apparently left some of his belongings there.
 {¶ 3} At some point, Ms. Kyer started dating Samuel Hoffmeyer. During the last week of August, Mr. O'Brien returned to the house and, at least according to him, moved back into the master bedroom with Ms. Kyer. On Friday, September 2, 2005, again according to Mr. O'Brien, he and Ms. Kyer had an argument, and he moved out of the master bedroom into the guest room. He testified that he told Ms. Kyer he would move out of the house the following Sunday, but Ms. Kyer denied he had said that. Ms. Kyer called police to the house on Friday evening in an effort to get Mr. O'Brien to immediately move out, but they would not make him leave, apparently because his name was on the lease.
 {¶ 4} At approximately 10:00 p.m. the next evening, Saturday, Mr. Hoffmeyer showed up at the house to take Ms. Kyer to a bar. Before leaving, she asked Jesse Ferrell, who had been renting a room in the attic of the house, and his girlfriend, Leslie Bever, to watch Page while she was gone. Mr. Ferrell and Ms. *Page 3 
Bever went to bed in the guest room, which was next to Page's room, and Mr. O'Brien went to sleep on a loveseat in the living room.
 {¶ 5} Mr. Hoffmeyer and Ms. Kyer returned to the house around 2:30 a.m. Sunday and found Mr. O'Brien on the loveseat. Ms. Kyer, who acknowledged she was a little drunk, told Mr. O'Brien she wanted him out of the house immediately. According to Ms. Kyer, she shoved Mr. O'Brien, Mr. O'Brien shoved her back, and then Mr. Hoffmeyer got involved. Mr. Hoffmeyer and Mr. O'Brien started fighting, and Ms. Kyer retrieved two metal stakes, each of which is about 18 inches long, and used one of them to hit Mr. O'Brien in the back of the head.
 {¶ 6} Mr. Ferrell and Ms. Bever were awakened by the noise of the fight. They arrived downstairs just after Ms. Kyer had hit Mr. O'Brien in the head and as she was raising a stake to hit him again. Mr. Ferrell grabbed Ms. Kyer in a bear hug and restrained her, preventing her from continuing to beat Mr. O'Brien with the metal stakes. According to Ms. Bever, Mr. Hoffmeyer was punching Mr. O'Brien repeatedly in his side. She testified that she ran up to Mr. Hoffmeyer and "shouldered" him in the chest. Because he was off-balance, he fell backwards. She testified that she continued shoving him and told him to leave. He went outside though a side door.
 {¶ 7} Once freed, Mr. O'Brien, who was bleeding from a wound on the back of his head, also went outside, using the front door. He testified that he went outside in an attempt to get cell phone reception so he could call the police. He *Page 4 
ended up on his hands and knees on the tree lawn immediately in front of the house.
 {¶ 8} Mr. Ferrell testified that he saw Mr. Hoffmeyer go to his truck, which was parked on the other side of the street, retrieve a black, aluminum baseball bat that was approximately 30 inches long, and return to where Mr. O'Brien was on the tree lawn. As he approached Mr. O'Brien, Mr. O'Brien stood, and Mr. Hoffmeyer swung the bat at him. Mr. O'Brien attempted to protect himself with his left arm. The bat glanced off his arm, breaking his elbow, and struck him in the face, breaking his left eye socket. Mr. Hoffmeyer returned to his truck, got in, and drove away.
 {¶ 9} Mr. O'Brien used his cell phone to call 911, but, almost immediately, a police officer responding to another call spotted him and stopped. Mr. O'Brien was treated at the scene and taken to a hospital.
 {¶ 10} Ms. Kyer pleaded guilty to domestic violence for her part in the attack and was called as a hostile witness by the State at Mr. Hoffmeyer's trial. The State also called Mr. O'Brien, Mr. Ferrell, and Ms. Bever as witnesses. Mr. Hoffmeyer neither testified nor called any other witness in his defense.
 SUFFICIENCY {¶ 11} Mr. Hoffmeyer moved for acquittal at the close of the State's case and, after resting without calling any witnesses, renewed that motion. His first *Page 5 
assignment of error is that the trial court incorrectly denied his motions for acquittal.
 {¶ 12} Under Rule 29(A) of the Ohio Rules of Criminal Procedure, a defendant is entitled to acquittal on a charge against him "if the evidence is insufficient to sustain a conviction. . . ." Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. State v. Thompkins, 78 Ohio St. 3d 380, 386
(1997); State v. West, 9th Dist. No. 04CA008554, 2005-Ohio-990, at ¶ 33. This Court must determine whether, viewing the evidence in a light most favorable to the prosecution, it would have convinced an average juror of Mr. Hoffmeyer's guilt beyond a reasonable doubt. State v.Jenks, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).
 {¶ 13} Mr. Hoffmeyer was convicted of violating Section 2903.11(A) of the Ohio Revised Code by feloniously assaulting Mr. O'Brien. A person violates Section 2903.11(A)(1) by knowingly causing serious physical harm to another and violates Section 2903.11(A)(2) by knowingly causing physical harm to another by means of a deadly weapon.
 {¶ 14} Both Mr. O'Brien and Mr. Ferrell testified that Mr. Hoffmeyer hit Mr. O'Brien with an aluminum baseball bat. Mr. Ferrell testified that Mr. Hoffmeyer had retrieved the bat from his truck, which had been parked across the street. Mr. O'Brien testified that he suffered a broken elbow and broken eye socket as a result of the attack. Viewing the evidence in a light most favorable to *Page 6 
the prosecution, it was sufficient to convince an average juror beyond a reasonable doubt that Mr. Hoffmeyer caused serious physical harm to Mr. O'Brien by means of a deadly weapon, thereby violating both subparts of Section 2903.11(A).
 {¶ 15} Mr. Hoffmeyer's only argument in support of his first assignment of error is that Mr. O'Brien and Ms. Kyer were biased witnesses and that Mr. Ferrell's and Ms. Bever's testimony was confused and wavering. Inasmuch as this Court must view the evidence in a light most favorable to the prosecution when considering its sufficiency, this argument fails. Mr. Hoffmeyer's first assignment of error is overruled.
 MANIFEST WEIGHT {¶ 16} Mr. Hoffmeyer's second assignment of error is that his conviction is against the manifest weight of the evidence. When a defendant argues that his conviction is contrary to the weight of the evidence, this court must review and weigh all the evidence that was before the trial court to determine whether the jury lost its way and created a manifest miscarriage of justice. State v. Otten,33 Ohio App. 3d 339, 340 (1986).
 {¶ 17} Mr. Hoffmeyer's sole argument in support of this assignment of error is that the jury "lost its way in resolving the conflicts in the evidence." He has not, however, suggested what those conflicts are and, indeed, there do not appear to be any. Mr. Hoffmeyer did not put on any evidence and, as noted in considering his first assignment of error, both Mr. O'Brien and Mr. Ferrell *Page 7 
testified that Mr. Hoffmeyer hit Mr. O'Brien with a baseball bat. There was no other explanation for how Mr. O'Brien's elbow and eye socket were broken. Ms. Kyer did state on cross-examination that Mr. O'Brien could have possibly broken his elbow by falling down the steps at the front of the house. She claimed, however, that she had gone upstairs to check on Page after the fight inside the house was broken up and did not see what happened outside. Her speculation about what could have possibly happened was not evidence that it did happen.
 {¶ 18} As mentioned previously, Mr. Hoffmeyer's argument in support of his first assignment of error was that Mr. O'Brien and Ms. Kyer were biased witnesses and Mr. Ferrell's and Ms. Bever's testimony was confused and wavering. Those arguments would go to the weight of their testimony and, therefore, are more properly considered in regard to this assignment of error. He could have also pointed out that Mr. Ferrell never claimed to have seen Mr. Hoffmeyer hit Mr. O'Brien with the bat until two months after the alleged crime, which would go to his credibility. Further, Ms. Kyer acknowledged that the State had agreed that it would not oppose probation for her if she testified truthfully at Mr. Hoffmeyer's trial, which would have gone to her credibility.
 {¶ 19} Neither Ms. Kyer nor Ms. Bever, however, claimed to have seen what happened outside the house. Even if Ms. Kyer was a biased witness or Ms. Bever's testimony was confused and wavering, therefore, that would not tend to show that the jury's verdict was against the manifest weight of the evidence. Mr. *Page 8 
Ferrell testified that he had not come forward earlier because he did not want to get involved. The jury did not lose its way by believing his testimony even though he had not immediately told police what he, at trial, claimed to have seen.
 {¶ 20} Having reviewed and weighed the evidence that was before the trial court, this Court cannot say that the jury lost its way and created a manifest miscarriage of justice by believing the uncontradicted testimony of Mr. O'Brien and Mr. Ferrell that Mr. Hoffmeyer hit Mr. O'Brien with a baseball bat. Mr. Hoffmeyer's second assignment of error is overruled.
 ADMISSION OF THE BAT INTO EVIDENCE {¶ 21} Mr. Hoffmeyer's third assignment of error is that the trial court incorrectly admitted a 25-inch-long, black, aluminum baseball bat into evidence. According to Mr. Ferrell, Mr. Hoffmeyer returned the bat he used to hit Mr. O'Brien to his truck before he drove away. The bat offered in evidence by the State did not come into the prosecutor's hands until two monts after the alleged attack.
 {¶ 22} Ms. Bever testified that, in addition to dating Ms. Kyer, Mr. Hoffmeyer also dated a woman named Brenda Phillips. Coincidentally, Ms. Phillips is Ms. Bever's brother's ex-girlfriend and the mother of his son. At some time after Mr. Hoffmeyer was arrested, Ms. Phillips came over to Ms. Bever's mother's house, where Ms. Bever and her children were living. Ms. Phillips was driving a pickup truck that belonged to Mr. Hoffmeyer, although it was not the *Page 9 
same truck he had driven on the night he allegedly attacked Mr. O'Brien. According to Ms. Bever, Ms. Phillips took the baseball bat that was admitted in evidence at trial from Mr. Hoffmeyer's truck and gave it to her son and Ms. Bever's children to play with. Ms. Bever testified that, when she spotted it, she thought it might be the bat Mr. Hoffmeyer had used to hit Mr. O'Brien, took it, and turned it over to the prosecutor. At some point, according to Ms. Bever, Mr. Hoffmeyer telephoned her and told her he had heard she had a telephone bill to pay and a bat for sale. No DNA, blood, or fingerprints were found on the bat.
 {¶ 23} Mr. Hoffmeyer has argued that the State failed to "establish a complete chain of custody to authenticate [the bat] for its admission by the trial court." He has also argued that the probative value of the bat was substantially outweighed by the danger of unfair prejudice.
 {¶ 24} When an object is proffered as evidence, a trial court must determine whether the proponent of its admission has made a prima facie showing that it is what the proponent claims it is: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Ohio Evid. R. 901(A). Once an object is admitted in evidence, it is for the finder of fact, in this case the jury, to make the ultimate determination of whether the object is what the proponent claims. 2 George E. Dix et al., McCormick on Evidence § 212, at 6 (Kenneth S. Broun ed. 2006). A trial court's *Page 10 
function in determining whether the proponent of an object's admission has presented a sufficient foundation to satisfy Rule 901(A), therefore, is similar to its function in determining whether a defendant is entitled to acquittal under Rule 29(A) of the Ohio Rules of Criminal Procedure: Has the proponent presented evidence that, if believed, proves that the object is what the proponent claims it is? Just as this Court's review of a ruling on a Rule 29(A) motion is de novo, its review of a trial court's determination that the proponent of an object has satisfied Rule 901(A) is also de novo. See 2 Dix § 212, at 7.
 {¶ 25} One way in which the proponent can satisfy Rule 901(A) is by presenting evidence that, if believed, establishes a chain of custody. That, however, is not the only way. Rule 901(B) provides a non-exclusive list of ten examples of methods of authentication or identification that satisfy Rule 901(A), including "[testimony of a witness with knowledge" and "[distinctive characteristics and the like." Evid. R. 901(B)(1), (4).
 {¶ 26} Authentication or identification through evidence of a chain of custody is often necessary for fungible objects. For example, testimony that a clear plastic bag of white powder looks like the same clear plastic bag of white powder that was taken from a defendant when he was arrested will not be sufficient to authenticate or identify it, at least if its relevance is premised on it being the same bag of powder. "[I]f the offered evidence is of such a nature as not to be readily identifiable," authentication or identification requires "testimony that *Page 11 
traces the chain of custody of the item from the moment it was found to its appearance in the courtroom, with sufficient completeness to render it reasonably probable that the original item has neither been exchanged nor altered." 2 George E. Dix et al, McCormick on Evidence § 213, at 11 (Kenneth S. Broun ed. 2006). A witness's testimony that he recognizes a unique object, on the other hand, will be sufficient to authenticate or identify that object without evidence tracing the chain of custody: "[T]he testimony of a percipient witness such as `I recognize the carved handle on this weapon; it is the same as the handle of the weapon I found at the crime scene; this is the weapon I found' will be sufficient to support a finding that the weapon is what it is claimed to be." Id. The bat admitted in evidence in this case is not as non-distinctive as a bag of white powder, but it also is not unique.
 {¶ 27} Part of the determination of whether the proponent of an object has presented a sufficient foundation for its admission is consideration of how the object is claimed to be relevant to the issues to be determined. An object may be relevant because it is "substantive" evidence or it may be relevant because it is "illustrative" of facts or opinions testified to by a witness. 2 Dix, § 212, at 3. The determination of which category a particular object falls into depends on the purpose for which its proponent is offering it. Robert D. Brain and Daniel J. Broderick, The Derivative Relevance of DemonstrativeEvidence: Charting Its Proper Evidentiary Status, 25 U.C. Davis L. Rev. 957, 971-972 (1992). *Page 12 
Sometimes the same object can be offered as both substantive and illustrative evidence. Id.
 {¶ 28} Mr. O'Brien testified at trial that he believed the bat proffered in evidence was the bat used to hit him. He said it was the same size and color. Similarly, Mr. Ferrell testified that the proffered bat appeared to be the bat he saw Mr. Hoffmeyer use to hit Mr. O'Brien. He said it was the same size and color and that both were aluminum. In addition, as mentioned previously, Ms. Bever testified that the proffered bat had come from a truck owned by Mr. Hoffmeyer and that he had telephoned her in an apparent attempt to purchase the bat from her. This evidence, particularly the inference from the claimed telephone call, was sufficient, if believed, to show that the proffered bat was the same bat used by Mr. Hoffmeyer to attack Mr. O'Brien. As such, it was substantive evidence that Mr. Hoffmeyer attacked Mr. O'Brien with a deadly weapon.
 {¶ 29} Even in the absence of Ms. Bever's testimony about how she came to have the bat and about Mr. Hoffmeyer's alleged telephone call to her, the proffered bat would have been admissible because it was illustrative of Mr. O'Brien's and Mr. Ferrell's testimony describing the bat Mr. Hoffmeyer allegedly used to attack Mr. O'Brien. As such, Mr. O'Brien's and Mr. Ferrell's testimony that it was the same color and size and made of the same material as the bat Mr. Hoffmeyer used would have been sufficient to satisfy Rule 901(A). See Robert D. Brain and Daniel J. Broderick, The Derivative Relevance of Demonstrative *Page 13 Evidence: Charting Its Proper Evidentiary Status, 25 U.C. Davis L. Rev. 957, 980-981 (1992). Once the bat was admitted, it was for the jury to decide whether it was the bat used by Mr. Hoffmeyer to hit Mr. O'Brien, whether it was like the bat used by Mr. Hoffmeyer to hit Mr. O'Brien, or whether Mr. Hoffmeyer even hit Mr. O'Brien. To the extent Mr. Hoffmeyer's third assignment of error is that the bat was not sufficiently authenticated or identified, it is overruled.
 {¶ 30} Rule 403(A) of the Ohio Rules of Evidence provides that relevant evidence is not admissible if its probative value is substantially outweighed by the danger of, among other things, unfair prejudice. Application of Rule 403(A) calls upon a trial court to, in its discretion, weigh the probative value of particular evidence against the danger that its admission will cause unfair prejudice. This Court will not reverse a trial court's weighing under Rule 403(A) unless it abused its discretion. See State v. Watson, 61 Ohio St. 3d 1, 7 (1991), abrogated on other grounds by State v. McGuire, 80 Ohio St. 3d 390, 403
(1997). The trial court did not abuse its discretion in this case by determining that the probative value of the baseball bat was not outweighed by the danger that its admission would unfairly prejudice Mr. Hoffmeyer. Mr. Hoffmeyer's third assignment of error is overruled.
 ALLEGED PROSECUTORIAL MISCONDUCT {¶ 31} During Mr. Ferrell's direct testimony, he stated that, while he had not wanted to get involved on the night of the alleged attack, he had informed the prosecutor approximately two months later that he had seen Mr. Hoffmeyer hit *Page 14 
Mr. O'Brien with an aluminum baseball bat. At that point, Mr. Hoffmeyer moved for a mistrial, telling the trial court that the prosecutor first told him that Mr. Ferrell had changed his story a week before trial, over a year after the prosecutor had known about the changed story. Mr. Hoffmeyer's fourth assignment of error is that the trial court incorrectly denied his motion for mistrial.
 {¶ 32} The only authority Mr. Hoffmeyer has cited as support for this assignment of error is Rule 21.06 of the Summit County Local Rules, which provides that the prosecutor assigned to a case is to "have available early and open discovery of pertinent evidence." The rule does not define "pertinent evidence."
 {¶ 33} Rule 16(B)(1)(e) of the Ohio Rules of Criminal Procedure provides, with a narrow exception not applicable in this case, that a defendant is entitled to the names and addresses of witnesses the prosecuting attorney intends to call at trial. Mr. Hoffmeyer has not argued, however, that he was not provided Mr. Ferrell's name or address. Rule 16(B)(1)(f) provides that a defendant is entitled to disclosure of all evidence favorable to him. Mr. Ferrell's statement to the prosecutor that he saw Mr. Hoffmeyer hit Mr. O'Brien, however, was not evidence favorable to Mr. Hoffmeyer; it tended to inculpate him. As noted by the State in its brief to this Court, Mr. Hoffmeyer, through his counsel, was free to attempt to interview Mr. Ferrell before trial in an effort to determine what his testimony would be at trial. Mr. Hoffmeyer has not suggested that he ever attempted to do so. It does not appear that the prosecutor engaged in misconduct by not telling *Page 15 
Mr. Hoffmeyer's lawyer that Mr. Ferrell had changed his story until a week before trial. Even if it could be determined that the prosecutor committed misconduct by not informing Mr. Hoffmeyer's lawyer that Mr. Ferrell would testify he saw Mr. Hoffmeyer hit Mr. O'Brien with a baseball bat, Mr. Hoffmeyer has not explained how that timing prejudiced him or how granting him a mistrial, which would have led to another trial, would have cured that claimed prejudice. Mr. Hoffmeyer's fourth assignment of error is overruled.
 MR. O'BRIEN'S PRIOR CONVICTIONS {¶ 34} During his direct examination, Mr. O'Brien acknowledged that he had been convicted of felony aggravated assault during 2000 and of felony domestic violence during both 2001 and 2002. Mr. Hoffmeyer's fifth assignment of error is that the trial court incorrectly prevented him from questioning Mr. O'Brien regarding the details of his domestic violence convictions.
 {¶ 35} Mr. Hoffmeyer has failed to provide a citation to the trial court record in support of this assigned error. See App. R. 12(A)(2). Further, in reading the transcript of Mr. O'Brien's trial testimony, this Court has not found an attempt by Mr. Hoffmeyer's lawyer to question him about the details of his domestic violence convictions. Perhaps the trial court, the prosecutor, and Mr. Hoffmeyer's lawyer had an off-the-record discussion about whether the trial court would allow such questions. This Court, however, cannot review things that occur off the record. "A fundamental precept of appellate review is that a trial court's judgment *Page 16 
is given a presumption of validity unless it affirmatively appears from the record that the trial court committed prejudicial error."Doperak v. Johnson, 11th Dist. No. 3536, 1986 WL 8215, at *1 (July 25, 1986). Inasmuch as Mr. Hoffmeyer's fifth claimed error does not appear in the record, it is overruled.
 CONCLUSION {¶ 36} Mr. Hoffmeyer's assignments of error are overruled. The judgment of the Summit County Common Pleas Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
 Costs taxed to appellant. *Page 17 
 SLABY, J. MOORE, P. J., CONCUR. *Page 1