[Cite as *Moretz v. Muakkassa*, 2012-Ohio-1177.]

| | | |
|---|---|---|
| STATE OF OHIO | )<br>)ss: | IN THE COURT OF APPEALS<br>NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

LARRY J. MORETZ, et al.

     Appellees / Cross-appellants

     v.

KAMEL F. MUAKKASSA, M.D., et al.

     Appellants / Cross-appellees

C.A. No.     25602

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2007-03-2157

DECISION AND JOURNAL ENTRY

Dated: March 21, 2012

DICKINSON, Judge.

INTRODUCTION

{¶1} Following surgery to remove a large, fluid-filled mass in his pelvis, Larry Moretz found that he had lost all control of his bowels and bladder and all sexual function. He and his wife sued his neurosurgeon and general surgeon. The general surgeon, Gary Williams, settled before trial. The Moretzes prosecuted their medical malpractice claims against the neurosurgeon, Kamel Muakkassa, arguing that he violated the standard of care by failing to scrub in on the surgery and failing to use magnification and/or nerve stimulation to help locate and protect nerves during the procedure. The parties do not dispute that Mr. Moretz's injuries are permanent or that they were caused by the surgery, but Dr. Muakkassa has argued that the injuries were not caused by any deviation from the standard of care. Following a jury verdict of $995,428 against him, Dr. Muakkassa appealed and the Moretzes cross-appealed. This Court affirms in part because the trial court (1) exercised proper discretion in determining there was

good cause to permit a later filing of the Moretzes' expert's deposition under Rule 32(A) of the Ohio Rules of Civil Procedure, (2) correctly refused to submit a narrative jury interrogatory, (3) properly determined that Evidence Rule 803(18) would not operate to exclude a medical illustration taken from a textbook, (4) properly admitted Mr. Moretz's medical bills and expert testimony about their reasonableness, and (5) properly excluded evidence of write-offs from medical bills in the absence of a proper foundation and because (6) Dr. Muakkassa did not demonstrate prejudicial error in the trial court's exclusion of evidence about Dr. Williams's settlement, (7) Section 1343.03(C) of the Ohio Revised Code is not unconstitutional, and (8) the trial court properly exercised discretion in determining that Dr. Muakkassa did not make a good faith effort to settle the claims against him. This Court reverses the judgment in part and remands this matter for recalculation of prejudgment interest because the trial court should have calculated interest on the verdict after it was reduced by the amount of Dr. Williams's settlement.

BACKGROUND

{¶2}    At the time of the surgery, Mr. Moretz was 36 years old, married, and the father of a two-year-old daughter. He had normal sensation and sexual function and normal bowel and bladder function. After experiencing acute abdominal pain and some constipation and hesitancy with urination, he sought treatment for his symptoms. A radiology report revealed a grapefruit-sized mass near his tailbone, and he was referred to Dr. Muakkassa for treatment of an anterior sacral meningocele. Mr. Moretz testified that his doctors told him he had a hole in his tailbone and the fluid around his spinal cord had forced its way out through the hole to form a pouch created by the membrane surrounding the spinal cord. He was told that the large, fluid-filled cyst was pressing on his bladder and other organs, causing his symptoms. Dr. Muakkassa advised

him to see Dr. Williams, a general surgeon, to discuss whether the cyst could be removed laparoscopically.

{¶3} The parties agree that Mr. Moretz had a large cyst located near the end of his spinal cord, but they disagree about whether it was a meningocele or a neurenteric cyst. The Moretzes' neurosurgery expert, Gary Dennis, described the cyst as an anterior sacral meningocele, which he explained is an "outpouching" of the meninges, or covering of the spinal cord, filled with cerebral spinal fluid. Dr. Muakkassa and his neurosurgery expert, Mark McLaughlin, however, testified that the cyst was not a meningocele, but a neurenteric cyst, which is associated with spinal abnormalities, but does not have nerve tissue in it. Dr. McLaughlin explained that a neurenteric cyst is "really more of a digestive [system] abnormality" that typically would be removed by a general surgeon rather than a neurosurgeon.

{¶4} Dr. Williams and Mr. Moretz testified consistently about the surgical plan. According to them, if Dr. Williams was unable to remove the cyst with a less invasive laparoscopic approach, he would switch to an open incision and provide access through the abdomen to the cyst. Then, Dr. Muakkassa would remove the cyst from the tip of the spinal cord and seal it off.

{¶5} Dr. Muakkassa and his expert, Dr. McLaughlin, testified that Dr. Muakkassa did not violate the standard of care in his treatment of Mr. Moretz. Dr. Muakkassa testified that he did not scrub in for Mr. Moretz's procedure because it was unnecessary. He said that he entered the surgical suite several times in order to consult with Dr. Williams. He described his involvement as checking to see that Dr. Williams located the cyst and properly closed it off to avoid a leak of cerebral spinal fluid. He said that he was not specifically looking for nerves because there are no nerves in that area, but if there had been any there, he would have seen

them. He described the surgery as removal of a cyst in the abdominal cavity, not neurosurgery. Dr. Muakkassa testified that Dr. Williams appropriately performed the surgery. He said the injuries occurred because the pressure of the cyst over time had caused damage to the nerves so that they could not endure the normal stretching required to access the cyst during surgery, resulting in a loss of function.

{¶6} After the jury returned a verdict against Dr. Muakkassa, he moved to apply the statutory cap for non-economic damages and a statutory set-off for the amount paid by Dr. Williams in settlement. The Moretzes opposed the motion for a set-off of the amount paid by Dr. Williams and moved for prejudgment interest. The trial court reduced the verdict by $39,600 to bring the noneconomic damages element in line with the cap, then calculated prejudgment interest before applying a set-off for the prior settlement. The trial court entered judgment for the Moretzes in the amount of $953,858.08 and ordered Dr. Muakkassa to pay costs.

## CIVIL RULE 32(A)

{¶7} Dr. Muakkassa's first assignment of error is that the trial court incorrectly permitted the Moretzes to present expert witness testimony via a videotape deposition that was not timely filed as required by Rule 32(A) of the Ohio Rules of Civil Procedure. He has argued that they failed to show good cause for the delay in filing the deposition and, had the deposition been excluded for violation of the rule, Dr. Muakkassa would have been entitled to a directed verdict.

{¶8} Under Rule 32(A) of the Ohio Rules of Civil Procedure, "[e]very deposition intended to be presented as evidence must be filed at least one day before the day of trial or hearing unless for good cause shown the court permits a later filing." The duty is mandatory, but the Rule allows the trial court to permit a later filing if it determines there is good cause to do so.

In this case, the Moretzes did not file the transcript of the videotaped deposition of their medical expert, Dr. Gary C. Dennis, until the second day of trial, after Dr. Muakkassa had objected to its use. The trial court overruled the objection, permitting the use of the deposition despite the "technical noncompliance" with Rule 32(A) because Dr. Muakkassa was not surprised that the Moretzes intended to introduce it as evidence at trial.

{¶9} The 1970 Staff Notes to Civil Rule 32 indicate that the requirement of filing the deposition the day before trial is designed to put opposing parties on notice that the deposition might be used in evidence. In this case, there was no need to put Dr. Muakkassa on notice that Dr. Dennis's deposition might be used in evidence at trial. On June 11, 2010, one month before trial, the Moretzes filed a "Notice of Videotaped Trial Testimony of Gary C. Dennis, M.D." that provided that "[t]he videotaped trial testimony will be used as evidence in the trial of this matter." Five days before trial, on July 7, 2010, lawyers for the Moretzes and Dr. Muakkassa traveled to Baton Rouge, Louisiana, to videotape the deposition of Dr. Dennis. Dr. Muakkassa was not surprised at trial that the Moretzes intended to use the videotaped deposition of his expert rather than calling Dr. Dennis live. In fact, Dr. Muakkassa had been aware of that for at least a month since he had received the notice of deposition. Furthermore, it is not clear from the record that the transcript could have been filed the day before trial as Rule 32(A) requires, given that it was taken in Louisiana on the Wednesday before a Monday trial date.

{¶10} Dr. Muakkassa has not explained to this Court how he was prejudiced by the trial court's admission of the deposition. There is no argument that he was surprised or somehow handicapped in his trial preparation due to the fact that the deposition had not been filed one day before the start of the trial. His only argument is that, because Dr. Dennis was the Moretzes' only medical expert, Dr. Muakkassa would have been entitled to a directed verdict if the

deposition had been excluded. One would guess that, if the trial court had sustained the objection to the use of the deposition, the Moretzes would have moved heaven and earth to secure Dr. Dennis's live testimony before resting their case. In any event, Rule 32 was not designed to facilitate a technical victory by avoiding a decision on the merits. In this situation, the trial court exercised proper discretion in determining there was good cause to "permit[ ]a later filing." Civ. R. 32(A). Dr. Muakkassa's first assignment of error is overruled.

## JURY INTERROGATORY

{¶11} Dr. Muakkassa's second assignment of error is that the trial court incorrectly refused to give a narrative jury interrogatory he requested. Dr. Muakkassa proposed a jury interrogatory that, in the event the jury found negligence, would have asked the jury to "[s]tate the respect in which you find Kamel Muakkassa was negligent." The trial court acknowledged the mandatory language of Civil Rule 49(B), but, citing *Freeman v. Norfolk & Western Railway Company*, 69 Ohio St. 3d 611 (1994), rejected the interrogatory, ruling that it was not appropriate because only one act of negligence was alleged. In response to Dr. Muakkassa's argument that the Moretzes had alleged multiple acts of negligence, the trial court determined that they all boiled down to criticizing Dr. Muakkassa for failing to scrub in to the surgery.

{¶12} Rule 49(B) of the Ohio Rules of Civil Procedure provides that a trial court "shall submit written interrogatories to the jury, together with appropriate forms for a general verdict, upon request of any party prior to the commencement of argument. . . . [T]he interrogatories shall be submitted to the jury in the form that the court approves [and] . . . may be directed to one or more determinative issues whether issues of fact or mixed issues of fact and law." "While it is mandatory that the court submit to the jury properly drafted interrogatories, the trial court retains discretion to reject interrogatories that are inappropriate in form or content." *Freeman v. Norfolk*

*& W. Ry. Co.*, 69 Ohio St. 3d 611, 613 (1994). "A court may reject a proposed interrogatory that is ambiguous, confusing, redundant, or otherwise legally objectionable." *Id.*

{¶13} "The purpose of an interrogatory is to 'test the jury's thinking in resolving an ultimate issue so as not to conflict with its verdict.'" *Freeman v. Norfolk & W. Ry. Co.*, 69 Ohio St. 3d 611, 613 (1994) (quoting *Riley v. Cincinnati*, 46 Ohio St. 2d 287, 298 (1976)). "Proper jury interrogatories must address determinative issues and must be based upon trial evidence." *Ramage v. Cent. Ohio Emergency Servs. Inc.*, 64 Ohio St. 3d 97, 107 (1992). Interrogatories that ask for conclusions that are not legitimate issues are improper. *Freeman*, 69 Ohio St. 3d at 614. The Ohio Supreme Court has held that, "[w]hen only one act of negligence is alleged against a defendant, an interrogatory asking the jury to specify the manner in which the defendant was negligent is improper." *Id.*

{¶14} The trial court told Dr. Muakkassa that it would reject his interrogatory for two reasons: (1) all allegations of negligence were dependent upon his failure to scrub in to the surgery, and (2) the narrative form was likely to confuse the jury. At trial, the Moretzes' medical expert, Dr. Dennis, testified that Dr. Muakkassa violated the applicable standard of care in the treatment of Mr. Moretz in three ways: (1) failure to scrub in to the procedure; (2) failure to use magnification via a microscope or telescopic glasses called Loupes; and (3) failure to use neurophysiological monitoring or nerve stimulation to help locate nerves to avoid injury during the procedure. He testified that these failures proximately caused Mr. Moretz's injuries.

{¶15} According to Dr. Dennis, Dr. Muakkassa "agreed to operate on Mr. Moretz, but, unfortunately, he never did." Dr. Dennis testified that Dr. Muakkassa fell below the standard of care because he "did not use the techniques that ordinarily he would have used if he were doing the procedure himself to be certain that nerves were not being injured and nerves were being

identified and protected." He explained that with a large mass that has been growing since birth, it is very difficult to see and identify normal nerves because they "are often plastered to the outside of a big cyst like that[.]" He criticized Dr. Muakkassa for failing to "get into the field himself and use his expertise . . . the way that a neurosurgeon would[.]" Dr. Dennis's testimony framed magnification and nerve stimulation as methods a neurosurgeon of ordinary skill would use to protect against nerve damage during this type of procedure. When asked if Dr. Muakkassa "ever even attempt[ed] to look for any nerves[,]" Dr. Dennis responded, "he didn't scrub in so - not that I could determine." Dr. Dennis testified that Dr. Muakkassa's failures to scrub in, use magnification, and monitor the nerves proximately caused Mr. Moretz's injury because "[Dr. Muakkassa] was not there physically in the field able to identify the nerves for Dr. Williams."

{¶16} Dr. Muakkassa testified that he did not need to look for nerves because there are no nerves in that area of the body. He also testified that the nerves involved in this injury are large enough to have been seen with the naked eye even from where he was standing without scrubbing in. There is no evidence that Dr. Muakkassa could have used either magnification or nerve stimulation techniques without scrubbing in to the procedure. As the evidence suggests that Dr. Muakkassa was criticized for not physically participating in the surgery, which would have allowed him to use magnification and nerve stimulation techniques to avoid injury to the nerves responsible for controlling bowel, bladder, and sexual function, the trial court correctly determined that the Moretzes' allegations boil down to one act of negligence. Therefore, the proposed narrative interrogatory would not have been appropriate in this case. *Freeman v. Norfolk & W. Ry. Co.*, 69 Ohio St. 3d 611, 614 (1994). Dr. Muakkassa's second assignment of error is overruled.

## EVIDENCE RULE 803(18)

{¶17} Dr. Muakkassa's third assignment of error is that the trial court violated Rule 803(18) of the Ohio Rules of Evidence by incorrectly allowing the jury to consider during deliberations an illustration taken from a learned treatise. He has argued that, as hearsay that fell within that exception, it was admissible for use during expert testimony, but was not permitted to be sent back with the jury for deliberations. The Moretzes have argued that Rule 803(18) does not apply to exhibit 36 and Dr. Muakkassa failed to show how he was materially prejudiced by its being sent back with the jury.

{¶18} Under Rule 803(18) of the Ohio Rules of Evidence, "statements contained in [a] published treatise[ ] . . . [regarding] history, medicine, or other science or art" may be admissible "[t]o the extent [they are] called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination" provided the treatise is "established as a reliable authority by the testimony or admission of the witness or by other expert testimony[.]" "If admitted, the statements may be read into evidence but may not be received as exhibits."

{¶19} Exhibit 36 is a medical illustration described as "a congenital anterior sacral meningocele." It is a photocopy of page 1157, Figure 83.1, from the second edition of a medical textbook entitled, "Spine Surgery Techniques, Complication, Avoidance and Management." Dr. Muakkassa's expert, Dr. McLaughlin, testified that he is familiar with the book and that he read the chapter regarding anterior sacral meningoceles several times in preparation for his trial testimony. He agreed the text is authoritative and that the relevant chapter is "excellent." Dr. McLaughlin testified that the illustration was an accurate depiction of what can occur with an anterior sacral meningocele. He testified, however, that he did not agree that Mr. Moretz had an anterior sacral meningocele or that the liquid inside the cyst was cerebral spinal fluid. He testified that Mr. Moretz had a neurenteric cyst, which can look very similar to an anterior sacral

meningocele, but does not involve the nervous system. The trial court admitted exhibit 36 over Dr. Muakkassa's hearsay objection, noting that the fact that the illustration came from a medical textbook does not change the fact that it is an artistic rendering of human anatomy.

{¶20} Evidence may not be admitted unless it is first properly authenticated via "evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid. R. 901(A). Dr. McLaughlin met that requirement by testifying that the illustration was an accurate depiction of an anterior sacral meningocele. The next question is whether the illustration of the meningocele is relevant evidence. Evidence Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Although the medical illustration at issue did not directly meet this test, a tangible "object may be relevant because it is 'substantive' evidence or it may be relevant because it is 'illustrative' of facts or opinions testified to by a witness." *State v. Hoffmeyer*, 9th Dist. No. 23712, 2008-Ohio-2311, at ¶ 27 (quoting 2 George E. Dix et al., McCormick on Evidence § 212, at 3 (Kenneth S. Broun ed. 2006)).

{¶21} Tangible objects used demonstratively "are relevant if they aid the trier [of fact] in understanding the witness's testimony, which itself makes a fact of consequence more or less probable." 2 George E. Dix et al., McCormick on Evidence § 212, at 3 (Kenneth S. Broun ed. 2006)). If the object played no part in the events underlying the litigation, "[i]ts source and how it was created may be of no significance whatever." *Id.* at § 214, at 15. "Instead, the theory justifying its admission is that the item is a fair and accurate representation of relevant testimony or documentary evidence otherwise admitted in the case. Typically a[ ] [visual] aid will be identified by a witness, during the witness's testimony, as a substantively correct representation

of something the witness once perceived and is now describing." *Id.* This Court has held that "[d]emonstrative evidence is admissible to illustrate a witness's testimony." *State v. McCollough*, 9th Dist. No. 2764, 1993 WL 290204 at *2 (Aug. 4, 1993). The Ohio Supreme Court has held that "[s]ending properly admitted evidence into jury deliberations rests within the sound discretion of the trial judge." *State v. McGuire*, 80 Ohio St. 3d 390, 396 (1997).

{¶22} A properly authenticated medical illustration of the human anatomy discussed by medical experts can be helpful to the jury in understanding the issues in a medical malpractice case. Here the Defendant's own expert vouched for the accuracy of this depiction of the anomalous anatomical condition the plaintiff sought to prove that he had. As the exhibit was authenticated and relevant, it was admissible at the discretion of the trial court unless prohibited by some other rule or statute. Evid. R. 402.

{¶23} At common law, "[m]edical books or treatises, even though properly identified and authenticated and shown to be recognized as standard authorities on the subjects to which they relate, [were] not admissible in evidence to prove the truth of the statements therein contained." *Hallworth v. Republic Steel Corp.*, 153 Ohio St. 349, paragraph two of the syllabus (1950). The common law later evolved to allow parties to use a learned treatise for the limited purpose of impeaching the credibility of an expert who had either relied on it or acknowledged it as authoritative in the field. *Stinson v. England*, 69 Ohio St. 3d 451, 458 (1994). In 1998, Ohio codified that concept in Evidence Rule 706. In 2006, the Supreme Court repealed Evidence Rule 706 when it adopted Rule 803(18), patterned after the federal rule, to allow statements in learned treatises to be used as substantive evidence rather than restricting their use to impeachment and rehabilitation.

**{¶24}** This exception to the hearsay rule is primarily aimed at passages in treatises containing "theories and opinions" of the author "representing inductive reasoning." See *Piotrowski v. Corey Hosp.*, 172 Ohio St. 61, 69 (1961) (explaining bases for the exclusion of learned treatises including lack of certainty regarding opinions and conclusions asserted in treatises and the inability to cross-examine the authors). Although an illustration in a textbook could include "statements" of the type Rule 803(18) was meant to address, exhibit 36 does not. Exhibit 36 is more similar to a photograph or map properly admitted if authenticated and relevant to the claims or defenses of either party. The identity of the artist who created the depiction is not of interest to the court. There is no need for cross-examination. We agree with the commentator on the Ohio Rules of Evidence who has written that the restriction in Evidence Rule 803(18) against taking learned treatises into the jury room "should not be read so broadly as to preclude the proponent from presenting the evidence in the form of a visual presentation where the presentation assists the jurors in evaluating and understanding the material." Glen Weissenberger, Ohio Evidence, § 803.224, at 183 (2011).

**{¶25}** Dr. Muakkassa has not argued that the author of the textbook made any "statements" in this illustration of a type Rule 803(18) was intended to address. He has argued only that, because it comes from a learned treatise, it is hearsay subject to that exception. To the extent that the author of the treatise "asserted" anything through the illustration, it was only that the illustration accurately depicted an anterior sacral meningocele. *See* Evid. R. 801(A), (C). Dr. Muakkassa's own expert witness adopted that "assertion" as his own. The illustration is not hearsay, and Rule 803(18) should not operate to exclude the illustration from the jury's consideration during deliberations. In this case, the treatise was not taken into the jury room to be potentially misconstrued by jurors interpreting a medical textbook without the help of an

expert. Dr. Muakkassa did not dispute the accuracy of the medical illustration or the author's basis for drawing it a certain way. In fact, his own expert vouched for the accuracy of it. Hearsay was Dr. Muakkassa's only basis for objecting to the jury considering the exhibit during deliberations. The trial court properly determined that Evidence Rule 803(18) would not operate to exclude the illustration.

{¶26} Dr. Muakkassa has argued that he was prejudiced because the admission of the exhibit made it more likely the jury would give undue weight to the theory that Mr. Moretz had a meningocele rather than a neurenteric cyst. There is no evidence to suggest the admission of the exhibit prejudiced Dr. Muakkassa. The illustration did not tend to prove that Mr. Moretz had a meningocele.

{¶27} Dr. Muakkassa has also argued exhibit 36 was not properly identified and authenticated because the Moretzes' lawyer failed to mark the exhibit while cross-examining Dr. McLaughlin and failed to establish which of two drawings he later marked as exhibit 36. If Dr. Muakkassa's lawyer felt there was some confusion about which illustration had been marked as exhibit 36, he did not raise that objection with the trial court when that confusion could have been eliminated, even though they twice discussed whether exhibit 36 should be admitted into evidence. This Court will not consider his argument for the first time on appeal. *See State v. Williams*, 51 Ohio St. 2d 112, paragraph one of the syllabus (1977). Dr. Muakkassa's third assignment of error is overruled.

EVIDENCE OF CO-DEFENDANT'S SETTLEMENT

{¶28} Dr. Muakkassa's fourth assignment of error is that the trial court incorrectly refused to allow him to present evidence of the fact that Dr. Williams, a witness at the trial, had been named as a co-defendant, but had settled the Moretzes' claims against him before trial. Dr.

Muakkassa has argued that he should have been permitted to introduce evidence of the settlement between Dr. Williams and the Moretzes in order to prove that Dr. Williams was biased against him. He has argued that "Dr. Williams was very angry at Dr. Muakkassa for his failure to settle this case and then being drawn back into the case to testify[,]" which resulted in "some very damaging testimony against Dr. Muakkassa" on cross-examination.

{¶29} Under Rule 408 of the Ohio Rules of Evidence, evidence of the settlement of a claim is inadmissible to prove liability or invalidity of the claim or its amount, but the rule "does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness[.]" The Moretzes moved in limine to exclude any mention of their settlement with Dr. Williams. The trial court granted the motion on the record prior to opening statements, but limited the scope of the ruling so that the jury could understand Dr. Williams's relationship to the case. The court permitted Dr. Muakkassa to elicit testimony about the fact that Dr. Williams had performed the surgery, had been named as a defendant in the case, and that, at the time of trial, he was no longer a defendant.

{¶30} At trial, Dr. Muakkassa called Dr. Williams as a witness. Dr. Muakkassa asked him whether he realized that, in deposition, the Moretzes' medical expert had said that Dr. Williams had deviated from the standard of care in his treatment of Mr. Moretz. Dr. Williams testified that he was aware of that and that he did not agree with that assessment. Dr. Muakkassa then asked two leading questions that made it clear to the jury that Dr. Williams had been a defendant in the lawsuit until he had settled the claim. Dr. Muakkassa's two questions were "you chose apparently at some point in time not to proceed to trial to defend yourself?" and "you were dismissed from this case I believe last year, 2009?" Dr. Williams responded affirmatively

to both questions. Dr. Muakkassa did not seek to introduce any further evidence regarding Dr. Williams's settlement.

{¶31} Even if this Court could find error in the trial court's ruling, Dr. Muakkassa has not pointed to any "damaging testimony" in the record nor explained how introducing further evidence about the settlement would have helped him avoid whatever prejudice he believes he suffered. App. R. 16(A)(7). Dr. Muakkassa has not affirmatively demonstrated prejudicial error. *See* Civ. R. 61; App. R. 16(A)(7); *Cardone v. Cardone*, 9th Dist. No. 18349, 1998 WL 224934 at *8 (May 6, 1998). His fourth assignment of error is overruled.

EVIDENCE OF MR. MORETZ'S MEDICAL BILLS

{¶32} Dr. Muakkassa's fifth assignment of error is in two parts. He has seemingly argued that the trial court incorrectly admitted Mr. Moretz's medical bills without competent evidence regarding the necessity and reasonableness of the charges. He has also argued that the trial court incorrectly excluded evidence of the write-offs of the medical bills without expert testimony regarding reasonableness.

{¶33} In considering the first part of this assignment of error, it is unclear whether Dr. Muakkassa intended to argue that the medical bills were inappropriately admitted and/or that the trial court should have excluded the testimony of Dr. Dennis regarding those bills. In any event, his argument appears to be limited to questioning the competence of the evidence tending to show the medical charges were reasonable.

{¶34} Section 2317.42.1 of the Ohio Revised Code provides that an itemized "written bill or statement" shall be "prima-facie evidence of the reasonableness of any charges and fees stated therein" provided the fees are for medication or services as described in the statute and the bills are delivered to all adverse parties not less than five days before trial. Compliance with the

statute creates a rebuttable presumption of the reasonableness of all charges reflected in the qualifying medical bills. *Stiver v. Miami Valley Cable Council*, 105 Ohio App. 3d 313, 320 (2d Dist. 1995); *see also Jaques v. Manton*, 125 Ohio St. 3d 342, 2010-Ohio-1838, at ¶ 5. The parties agree that the Moretzes met the requirements of the statute in this case. Thus, the medical bills were prima facie evidence of the reasonableness of the charges reflected in the bills.

{¶35} In addition to the presumption triggered by compliance with the statute, the Moretzes offered further evidence of the reasonableness of the charges. On direct examination, Dr. Dennis considered exhibit one, which was identified as a compilation of Mr. Moretz's medical bills with a summary sheet on top that was prepared by his lawyer. Dr. Dennis testified that the charges were reasonable and necessary. On cross-examination, he testified that he had not considered each line on each bill, but had relied on the accuracy of the summary sheet to support his opinion that the bills reflected reasonable and necessary charges for medical services rendered to Mr. Moretz due to the injuries received via Dr. Muakkassa's alleged deviation from the standard of care. Dr. Dennis offered a competent expert opinion regarding the reasonableness of the charges for the services rendered. Dr. Muakkassa's cross-examination may have affected the credibility of that opinion, but that goes only to the weight and not the admissibility of the evidence. *See Segedy v. Cardiothoracic & Vascular Surgery of Akron Inc.*, 182 Ohio App. 3d 768, 2009-Ohio-2460, at ¶ 18 (9th Dist. 2009).

{¶36} The second part of Dr. Muakkassa's fifth assignment of error is that the trial court incorrectly excluded evidence of the medical providers' write-offs of the medical bills. In personal injury cases, "[a] plaintiff is entitled to recover the reasonable value of medical expenses incurred due to the defendant's conduct." *Jaques v. Manton*, 125 Ohio St. 3d 342, 2010-Ohio-1838, at ¶ 15. The reasonable cost of any given medical procedure is generally

"beyond the knowledge or experience possessed by lay persons." Evid. R. 702(A). Therefore, although medical bills are evidence of what the provider charged for each service, expert testimony would be required to prove the reasonableness of those charges.

{¶37} The General Assembly created a shortcut for proving the reasonableness of medical charges in a personal injury or wrongful death case via the rebuttable presumption created by compliance with Section 2317.42.1. The defendant may then present contrary evidence to challenge the reasonableness of the charges. *Robinson v. Bates*, 112 Ohio St. 3d 17, 2006-Ohio-6362, at ¶ 9. Because plaintiffs are not always responsible for paying the total amounts charged by their medical providers, questions have developed regarding how defendants might rebut the presumption of reasonableness created by Section 2317.42.1. Frequently, plaintiffs are able to settle their medical bills for less than the full amount, especially if they have health insurance. If the plaintiff had secured health insurance coverage prior to being injured by a defendant's negligence, then, generally speaking, the insurance company will have negotiated with the providers for a reduced rate. In that case, the plaintiff and/or his employer pays insurance premiums and, when bills are issued for care received, the insurance company and plaintiff together pay the provider something that is often significantly less than the amount billed. The provider then writes off the difference, accepting the reduced rate as payment in full. Usually, the insurance contract will also include a subrogation clause that entitles the insurance company to recover from the plaintiff any payments it made on his behalf in the event that the plaintiff recovers those costs from a negligent third party who caused the injuries.

{¶38} The collateral source rule has been described as "the judicial refusal to credit to the benefit of the wrongdoer money or services received in reparation of the injury caused which emanates from sources other than the wrongdoer." *Roberts v. State Farm Mut. Auto. Ins. Co.*,

155 Ohio App. 3d 535, 2003-Ohio-5398, at ¶ 69 (2d Dist.) (quoting *Carville v. Estate of Phillips*, 2d Dist. No. 99CA52, 2000 WL 1209272 at * 2 (Aug. 25, 2000)). The collateral source rule "is an exception to the general rule that in a tort action, the measure of damages is that which will compensate and make the plaintiff whole." *Robinson v. Bates*, 112 Ohio St. 3d 17, 2006-Ohio-6362, at ¶ 11. "Through this exception, the plaintiff is allowed to receive more than the amount of damages [ ]he actually incurred." *Roberts*, 2003-Ohio-5398, at ¶ 69. The purpose of the collateral source exception to the general rule of tort damages is to ensure that "benefits the plaintiff receives from a source wholly independent of the wrongdoer [do] not benefit the wrongdoer by reducing the amount of damages that a plaintiff might otherwise recover from him." *Id.* The rationale is that a negligent defendant should not reap the advantage created by a plaintiff's foresight in securing insurance or other sources of benefits to help cover the cost of injuries caused by the defendant. *Robinson*, 2006-Ohio-6362, at ¶ 11. "As an evidentiary rule, the collateral source rule bars the introduction into evidence of collateral payments to the plaintiff in order to prevent the jury's consideration of such payments in determining the amount of damages." *Roberts*, 2003-Ohio-5398, at ¶ 69 (quoting *Carville*, 2000 WL 1209272 at *2).

{¶39} In 2005, the General Assembly adopted a statute essentially limiting the collateral source rule to sources of benefits that carry a right of subrogation. Under Section 2315.20(A) of the Ohio Revised Code, a defendant may introduce evidence of collateral source benefits to the plaintiff only if the source of those benefits does not have a right of subrogation. Thus, the General Assembly determined that, if the plaintiff will have to reimburse his insurance carrier under a subrogation clause, then the jury should not learn of the collateral benefit. Instead, the jury will hear only the amounts charged for each service and, if the judgment includes those charged amounts, it will be the plaintiff rather than the defendant who reaps the benefit of any

amounts written off by his health care providers. Five years after the codification of the rule, the Ohio Supreme Court held that "the statute does not address evidence of . . . write-offs by medical providers[.]" *Jaques v. Manton*, 125 Ohio St. 3d 342, 2010-Ohio-1838, at ¶ 1. Under *Jaques*, "evidence of write-offs is admissible to show the reasonable value of medical expenses." *Id.* at ¶ 16.

{¶40} In this case, the trial court excluded evidence of the amounts written off by medical providers due to a lack of foundation, not because of the collateral source rule. Dr. Muakkassa sought to offer evidence of the amounts written off of the medical bills in order to prove that the reasonable value of the medical services was less than the amounts the providers charged. He did not, however, offer any expert testimony on the issue of the reasonable value of the medical services rendered. "[T]he reasonable value of medical services is a matter for the jury to determine from all relevant evidence." *Jaques v. Manton*, 125 Ohio St. 3d 342, 2010-Ohio-1838, at ¶ 15 (quoting *Robinson v. Bates*, 112 Ohio St. 3d 17, 2006-Ohio-6362, at ¶ 17). In *Jaques*, the Ohio Supreme Court held that, regardless of the collateral source rule and any applicable subrogation rights, write-offs by medical providers are relevant evidence bearing on the reasonable value of medical services. *Id.* at ¶ 16. *Jaques*, however, did not address the question at issue in this case, that is, how to lay a foundation for such evidence.

{¶41} As the reasonable value of medical services is outside the common knowledge of laymen, expert testimony is necessary as a foundation for presentation of this evidence to the jury. *See* Evid. R. 702(A). For plaintiffs seeking to present amounts charged as evidence of the reasonable value of medical services rendered, the General Assembly has codified a rebuttable presumption in that regard, obviating the need for expert testimony. R.C. 2317.42.1. Under the statute, in the absence of contrary evidence, the amount charged will be sufficient to prove the

reasonable value of the medical services. Defendants seeking to introduce evidence of write-offs do so in an effort to contradict that statutory presumption.

**{¶42}** Defendants offer evidence of write-offs in hopes that juries will determine the reasonable value of the medical services was actually equal to the amount charged minus the amount written off by the provider. *See Evans v. Thobe*, 195 Ohio App. 3d 1, 2011-Ohio-3501, at ¶ 18 (2d Dist). Despite the Ohio Supreme Court's holding in *Jaques* that such evidence is relevant and admissible, there is no presumption or shortcut available to allow such evidence to be introduced without a proper foundation. As Dr. Muakkassa offered evidence of the amounts written off by Mr. Moretz's medical providers as evidence to contradict the statutory presumption of reasonableness of the charges, the trial court correctly excluded the evidence in the absence of competent expert testimony. Dr. Muakkassa's fifth assignment of error is overruled.

## CUMULATIVE EFFECT OF TRIAL ERRORS

**{¶43}** Dr. Muakkassa's sixth assignment of error is that the trial court denied him a fair trial through the cumulative effect of the trial court's errors. As this Court has identified no trial error, this assignment of error is overruled.

## PREJUDGMENT INTEREST

**{¶44}** Dr. Muakkassa's seventh assignment of error is that the trial court incorrectly awarded prejudgment interest. He has argued that the prejudgment interest statute is unconstitutional, the Moretzes failed to satisfy their burden to prove they were entitled to prejudgment interest, and the trial court abused its discretion in calculating the interest. Under Section 1343.03(C) of the Ohio Revised Code, following a judgment, decree, or order for the payment of money in a civil action based on tortious conduct, a party may move for prejudgment

interest. If the trial court determines at a subsequent hearing "that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case," then it shall order prejudgment interest. R.C. 1343.03(C)(1).

Constitutionality of Section 1343.03(C)

{¶45} Dr. Muakkassa has argued that the prejudgment interest statute is unconstitutional because it violates the right to trial by jury and the equal protection clause. His arguments are brief and do not cite either the state or federal constitution. It appears he has argued that the statute violates the right to a jury trial because it abrogated the common law right to have the jury make prejudgment interest determinations and the statute punishes defendants for exercising their right to go to trial.

{¶46} The Ohio Supreme Court has ruled that "Section 1343.03(C) does not infringe upon a party's right to a jury trial." *Galayda v. Lake Hosp. Sys. Inc.*, 71 Ohio St. 3d 421, 427 (1994) (quoting *Kalain v. Smith*, 25 Ohio St. 3d 157, 160 (1986)). Although the statute has been amended several times over the intervening years, the substance of the section applicable to Dr. Muakkassa's arguments remains the same today. The Ohio Supreme Court has ruled that imposing a requirement of a "good faith effort to settle" does not force a defendant to forgo the right of having a jury determine the existence of his liability in a tort action. *Id.* (quoting *Kalain*, 25 Ohio St. 3d at 160). Although a defendant who chooses to try his case risks the possibility that he may ultimately be found liable for a larger total judgment under Section 1343.03(C), the statute "in no way precludes a defendant from insisting on exercising his right to trial by jury nor does it 'create a financial barrier that prevents a . . . party from taking his case to a jury.'" *Id.* (quoting *Kuenzer v. Teamsters Union Local 507*, 66 Ohio St. 2d 201, 203 (1981)). The Supreme

Court determined that an award of prejudgment interest under the statute is compensatory rather than punitive. *Id.* "Where a defendant benefits monetarily as a result of failing to negotiate possible settlement in good faith, R.C. 1343.03 does not constitute a penalty, but, to the contrary, is wholly compensatory, and indeed equitable, in nature." *Id.* at 428.

{¶47} The Ohio Supreme Court has also held that Section 1343.03(C) does not violate the Due Process Clause of the Ohio Constitution. *Galayda v. Lake Hosp. Sys. Inc*., 71 Ohio St. 3d 421, 428 (1994) (citing Ohio Const. Art. I § 16). The Supreme Court agreed "with the overwhelming weight of authority that prejudgment interest statutes are rationally related to the legitimate goals of encouraging prompt resolution of disputes, and ensuring prompt payment of compensation to parties injured by tortious conduct." *Id.* To the extent that Dr. Muakkassa has argued that Section 1343.03(C) is unconstitutional, this assignment of error is overruled.

## Award of Prejudgment Interest

{¶48} As part of his seventh assignment of error, Dr. Muakkassa has argued that the Moretzes failed to satisfy their burden of proof under Section 1343.03(C). The Ohio Supreme Court has written that the prejudgment interest statute "was enacted to promote settlement efforts, to prevent parties who have engaged in tortious conduct from frivolously delaying the ultimate resolution of cases, and to encourage good faith efforts to settle controversies outside a trial setting." *Kalain v. Smith*, 25 Ohio St. 3d 157, 159 (1986). "A party has not 'failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party." *Id*.

**{¶49}** The Supreme Court has also written that, "[i]f a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer." *Kalain v. Smith*, 25 Ohio St. 3d 157, 159 (1986). It has also issued a caveat that "the 'good faith, objectively reasonable belief' language of *Kalain* must be 'strictly construed so as to carry out the purposes of R.C. 1343.02.'" *Galayda v. Lake Hosp. Sys. Inc.*, 71 Ohio St. 3d 421, 428 (1994) (quoting *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St. 3d 638, 659 (1994)). In *Galayda*, the Ohio Supreme Court held that a trial court correctly awards prejudgment interest if "a defendant 'just says no' [to settlement discussions] despite a plaintiff's presentation of credible medical evidence that the defendant physician fell short of the standard of professional care required of him, . . . it is clear that the plaintiff has suffered injuries, and . . . the causation of those injuries is arguably attributable to the defendant's conduct." *Id.* at 429.

**{¶50}** The prejudgment interest statute uses mandatory language. "Therefore, if a party meets the four requirements of the statute, the decision to allow or not allow prejudgment interest is not discretionary. What is discretionary with the trial court is the determination of lack of good faith." *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St. 3d 638, 658 (1994). Thus, "[w]e review a trial court's determination regarding whether a party made a 'good faith effort' to settle for an abuse of discretion." *Kane v. Saverko*, 9th Dist. No. 23908, 2008-Ohio-1382, at ¶ 9.

**{¶51}** In this case, the Moretzes alleged that, despite mounting evidence against him, Dr. Muakkassa failed to make any settlement offer over the course of this lengthy litigation in the face of settlement overtures from the Moretzes. There was evidence that, in May 2009, the Moretzes provided both defendants with a settlement package and demand in preparation for mediation. There was also evidence that they settled with Dr. Williams at the mediation

conference and tried to discuss settlement with Dr. Muakkassa as late as the final pretrial and again on the day of the prejudgment interest hearing.

{¶52} Dr. Muakkassa has argued that the evidence introduced at the prejudgment interest hearing established that he had a good faith, objectively reasonable belief that he had no liability. Therefore, he did not need to make a settlement offer in order to avoid paying prejudgment interest under Section 1343.03(C). The trial court determined that "Dr. Muakkassa did not engage in a good faith effort to settle this case." The trial court indicated that its assessment was based on testimony from the hearing indicating that "Dr. Muakkassa and his insurer made a decision at the beginning of this litigation to proceed to trial, and no offer of settlement, however small, would be entertained." The court pointed to testimony of Dr. Muakkassa's insurance adjuster, Linda Gorjup, indicating that the insurance company would not have offered even one dollar to settle this case, even if Dr. Muakkassa had consented to settle. Ms. Gorjup testified that she attended the mediation conference because the court had ordered it, but she did not participate in any settlement negotiations at any time during the pendency of this litigation.

{¶53} The Moretzes have argued that Ms. Gorjup's "cavalier attitude" at the hearing may have influenced the trial court's opinion of the reasonableness of the insurer's belief that Dr. Muakkassa had no liability for Mr. Moretz's injuries. The Moretzes argued that the insurer's position was largely based on online medical research conducted by Ms. Gorjup, who has no medical training. Ms. Gorjup testified that she considered reviews of the case by the defense lawyer and several medical panels and she concluded that the case was defensible. She testified that, although the company reserved a million dollars for the case based on damages alone, she did not think a jury would find that Dr. Muakkassa had proximately caused Mr. Moretz's injuries

because Dr. Muakkassa did not perform the surgery. Given that the allegations against Dr. Muakkassa were based entirely on what he had failed to do while Dr. Williams performed the surgery, the trial court could have reasonably concluded that a firm no-liability position was not objectively reasonable under the circumstances.

**{¶54}** Experts on both sides agreed that Mr. Moretz's injuries are permanent and that they were caused by the surgery. Dr. Williams testified at deposition that, before the surgery, he believed the two would be co-surgeons participating in the procedure together. Dr. Muakkassa admitted at his deposition that he did not scrub in or make any effort to locate any nerves at any time during the surgery. Although he testified at deposition that Dr. Williams never asked him to scrub in, Dr. Williams later testified at his deposition that he had invited Dr. Muakkassa to scrub in during the procedure.

**{¶55}** Through depositions taken nearly two years before the trial, the Moretzes developed some credible medical evidence that Dr. Muakkassa fell short of the standard of care in his treatment of Mr. Moretz, that Mr. Moretz suffered serious permanent injuries, and that the causation of those injuries was arguably attributable to Dr. Muakkassa's conduct. *See Galayda v. Lake Hosp. Sys. Inc.*, 71 Ohio St. 3d 421, 428 (1994). At the prejudgment interest hearing, the trial court heard evidence tending to show that, while the Moretzes made various attempts at initiating settlement discussions and successfully settled with a co-defendant, Dr. Muakkassa steadfastly refused to make any offer of settlement. *See id.* This Court cannot say that the trial court improperly exercised its discretion in determining that Dr. Muakkassa did not make a good faith effort to settle the claims against him. To the extent that assignment of error number seven addressed the basis for the trial court's determination that prejudgment interest should be awarded, it is overruled.

Calculation of Prejudgment Interest

{¶56} The last part of Dr. Muakkassa's seventh assignment of error is that the trial court incorrectly calculated prejudgment interest by basing it on the amount of the verdict before applying the statutory set-off for the amount of his co-defendant's settlement. Under Section 2307.28, the effect of the Moretzes' settlement agreement with Dr. Williams was to reduce the claim against Dr. Muakkassa by the amount Dr. Williams paid in settlement. Section 1343.03(C) of the Ohio Revised Code does not address the effect that statutory set-offs have on the calculation of prejudgment interest. The question is whether a trial court must calculate prejudgment interest before or after it reduces the verdict by the amount of a settlement paid by a co-defendant.

{¶57} At common law, injured parties had a right to prejudgment interest because "if reparation for the injury is delayed for a long time by the wrong-doer, the injured party can not be made whole unless the damages awarded include compensation, in the nature of interest, for withholding the reparation which ought to have been promptly made." *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St. 3d 638, 656 (1994) (quoting *The Lawrence RR Co. v. Cobb*, 35 Ohio St. 94, 98-99 (1878)). The Supreme Court has explained that, in addition to encouraging good faith efforts to settle cases in order to conserve judicial resources, "[Section] 1343.03(C), like any statute awarding interest, has the additional purpose of compensating a plaintiff for the defendant's use of money which rightfully belonged to the plaintiff." *Musisca v. Massillon Cmty. Hosp.*, 69 Ohio St. 3d 673, 676 (1994) (citing *West Virginia v. United States*, 479 U.S. 305, 310 n.2 (1987)). Section 1343.03(C) is not punitive. The Ohio Supreme Court has held that the practice of disgorging the benefit a defendant gains from delaying plaintiff's recovery is

"wholly compensatory, and indeed equitable, in nature." *Galayda v. Lake Hosp. Sys. Inc*., 71 Ohio St. 3d 421, 428 (1994).

**{¶58}** In this case, the trial court indicated that it calculated prejudgment interest on the verdict before applying the set-off in order to prevent Dr. Muakkassa from benefitting from his co-defendant's good faith settlement efforts. If prejudgment interest is calculated before the set-off is applied, however, then the plaintiff receives a windfall. *See Mowery v. Welsh*, 9th Dist. No. 22849, 2006-Ohio-1552, at ¶ 34 (construing R.C. 1343.03(A)). A plaintiff is not entitled to prejudgment interest on money previously received via settlement because he was not deprived of the beneficial use of that money while the defendant delayed judgment. In keeping with the purposes of the statute discussed above, we hold that a trial court must first apply the statutory set-off under Section 2307.28 before calculating prejudgment interest under Section 1343.03(C). To the extent that Dr. Muakkassa's seventh assignment of error addressed the trial court's calculation of prejudgment interest, it is sustained.

THE MORETZES' ASSIGNMENT OF ERROR ON CROSS-APPEAL

**{¶59}** The Moretzs' assignment of error on their cross-appeal is that the trial court incorrectly granted a set-off under Section 2307.28 of the Ohio Revised Code because Dr. Muakkassa did not plead it as an affirmative defense and failed to support his motion with evidence. Section 2307.28 provides that the effect of a release or covenant not to sue or not to enforce judgment given to one of two or more people for the same injury or loss to person or property, is that it reduces the settling plaintiffs' claim against the remaining defendants and releases the settling defendant from all liability for contribution to any other tortfeasor.

**{¶60}** Following the verdict in this case, Dr. Muakkassa moved the trial court to reduce the jury's award of noneconomic damages to the statutory cap of $500,000 and to further reduce

the verdict by the amount Dr. Williams paid in settlement. The parties agreed to submit the issue on the briefs, and Dr. Muakkassa did not submit any evidentiary materials in support of his motion. The trial court granted the set-off. The Moretzes have cross-appealed, arguing that the trial court incorrectly granted the set-off because Dr. Muakkassa waived it by failing to plead it as an affirmative defense. They have also argued that Dr. Muakkassa failed to carry his burden of proof on the issue. The Moretzes did not make either of these two arguments to the trial court. This Court will not consider these arguments for the first time on appeal. *Eisenbrei v. Akron*, 9th Dist. No. 25788, 2011–Ohio–5777, at ¶ 12 (citing *Thrower v. Akron Dep't of Public Hous. Appeals Bd.*, 9th Dist. No. 20778, 2002–Ohio–3409, at ¶ 20). The Moretzes' assignment of error is overruled.

## CONCLUSION

{¶61} Dr. Muakkassa's first through sixth assignments of error are overruled. His seventh assignment of error is sustained to the extent that it addressed the trial court's calculation of prejudgment interest. The remainder of his seventh assignment of error is overruled. The Moretzes' assignment of error is overruled. The judgment of the Summit County Common Pleas Court is reversed, in part, and this matter is remanded for a recalculation of prejudgment interest consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____

CLAIR E. DICKINSON
FOR THE COURT

MOORE, J.
CONCURS.

CARR, P. J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶62} I concur in all of the majority opinion except for the third and seventh assignments of error. With respect to the third assignment of error, I concur in judgment only on the basis that if there was any error, it was harmless. I respectfully dissent in regard to the seventh assignment of error on the basis that the trial court did not err in calculating prejudgment interest prior to applying the set-off from Dr. Williams' settlement.

APPEARANCES:

DOUGLAS G. LEAK, Attorney at Law, for Appellant / Cross-appellees.

THOMAS A. TREADON, Attorney at Law, for Appellant / Cross-appellees.

MARK D. AMADDIO, Attorney at Law, for Appellees / Cross-appellants.

DAVID M. TODARO, Attorney at Law, for Appellees / Cross-appellants.

MARK S. FUSCO, Attorney at Law, for Appellees / Cross-appellants.